830 P.2d 442

**In the Matter of the RIGHTS TO THE USE OF THE GILA RIVER.**

**Petition of SALT RIVER PROJECT/ SALT RIVER VALLEY WATER USERS' ASSOCIATION, Petitioner.**

No. WC–90–0001–IR.

Supreme Court of Arizona.

March 19, 1992.

State of Ariz. by Honorable Grant Woods, Joseph E. Clifford, Carol B. Lewin, Phoenix, for State of Ariz.

John Gliege, Flagstaff, for Pinetop–Lakeside Sanitation Dist.

Snell & Wilmer by Robert B. Hoffman, Carlos D. Ronstadt, Jeffrey W. Crockett, Phoenix, for Arizona Public Service, Magma Copper Co., and Farmers Inv. Co.

Department of Justice by Steven E. Carroll, F. Patrick Barry, Dirk D. Snel, Washington, D.C., for U.S.

Jennings, Strouss & Salmon by M. Byron Lewis, John B. Weldon, Jr., Lisa M. McKnight, Phoenix, for Salt River Project Agr. Imp. and Power Dist. and Salt River Valley Water Users' Ass'n.

John S. Schaper, Phoenix, for Buckeye Irr. Co. and Buckeye Water Conservation and Drainage Dist.

Sparks & Siler, P.C. by Joe P. Sparks, Kevin T. Tehan, Scottsdale, for San Carlos Apache Tribe, Tonto Apache Tribe, and Yavapai–Apache Indian Community, Camp Verde Reservation.

Cox & Cox and Rodney B. Lewis by Z. Simpson Cox, Alfred S. Cox, Alan J. Cox, Rodney B. Lewis, Phoenix, for Gila River Indian Community and Silas Kisto.

City of Phoenix by Roderick G. McDougall, M. James Callahan, Katherine Ott Verburg, Phoenix, for City of Phoenix.

Ryley, Carlock & Applewhite by George Read Carlock, Michael J. Brophy, Sheryl A. Taylor, Phoenix, for Roosevelt Water Conservation Dist.

Apker, Apker, Haggard & Kurtz by Jerry L. Haggard, Phoenix, for Phelps Dodge.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Ralph E. Hunsaker, Phoenix, for Church of Jesus Christ of Latter Day Saints.

City of Glendale by Jennele M. Morris O'Hair, Glendale, for City of Glendale.

Meyer, Hendricks, Victor, Osborn & Maledon by Lee H. Storey, Phoenix, for Cyprus Minerals.

Stephens, Watts & Brown by James P. Watts, Phoenix, for Cities of Mesa, Tempe, and Avondale.

Wayne Klump, pro se Representative for amici Klump Bros.

## OPINION

FELDMAN, Chief Justice.

We granted review of this interlocutory appeal to determine whether the procedures adopted by the trial court for service of summons and filing and service of pleadings in this water rights adjudication proceeding comport with due process under the United States and Arizona Constitutions. We have jurisdiction pursuant to A.R.S. § 45–252 and Ariz. Const. art. 6, § 5(3). *See infra* note 2.

## FACTS AND PROCEDURAL HISTORY

This case is a consolidated general adjudication of all water rights in the Salt, Verde, Gila, Agua Fria, Upper Santa Cruz, and San Pedro River watersheds. The procedural history of this adjudication is already complex, and is outlined in earlier interlocutory decisions. *See Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 557–59, 103 S.Ct. 3201, 3209–10, 77 L.Ed.2d 837 (1983) (subsection entitled "The Arizona Cases"); *United States v. Superior Court*, 144 Ariz. 265, 270–71, 697 P.2d 658, 663–64 (1985) (subsection entitled "The Controversy"). We therefore limit our description to the procedural history relevant to the analysis of the issue now before us. It is necessary to mention, however, that the issues in this consolidated proceeding are central to the future of this state:

> The problem ... is clear. Since there is not enough water to meet everyone's demands, a determination of priorities and a quantification of the water rights accompanying those priorities must be made. Obviously, such a task can be accomplished only in a single proceeding in which all substantial claimants are before the court so that all claims may be examined, priorities determined, and allocations made.

*United States v. Superior Court*, 144 Ariz. at 270, 697 P.2d at 663.

The Salt River Valley Water Users Association (SRVWUA) initiated the adjudication in 1974 by filing a petition with the Arizona State Land Department (SLD) under former A.R.S. §§ 45–231 to 45–245 for

an adjudication of water rights in the Salt River. Those statutes were repealed and superseded in 1979, and this adjudication now proceeds pursuant to A.R.S. §§ 45–251 to 45–260. The current statutes assign jurisdiction over water rights adjudications to the superior courts. Accordingly, the original petition by SRVWUA was transferred from SLD to the Maricopa County Superior Court, where it was consolidated with other petitions filed under A.R.S. §§ 45–251 to 45–260 for general adjudications of water rights in the Salt, Verde, and San Pedro Rivers, and assigned to the current trial judge. The trial court consolidated the various petitions and subsequently granted motions expanding the scope of the adjudication to include the Upper Agua Fria, Upper Gila, Lower Gila, and Upper Santa Cruz Rivers.[1]

On May 29, 1986, the trial court entered Pre–Trial Order No. 1 Re: Conduct of Adjudication (hereinafter the Pretrial Order). Through this order, the trial court established the procedures it would follow to manage this complex, multi-party litigation, and identified the legal issues the court would resolve before proceeding to its adjudication of individual claims. From 1987 to 1990, the trial court received briefs and heard arguments on these issues from a steering committee of lawyers it had appointed for this purpose. Throughout this period, the court applied the procedures established by the Pretrial Order.

On December 11, 1990, we granted interlocutory review of six issues decided by the trial court through its pretrial orders.[2] This opinion addresses the first of those issues: whether the Pretrial Order's provisions for filing and service satisfy the due process guarantees of the United States and Arizona Constitutions. *See* U.S. Const. amend. XIV, § 1; Ariz. Const. art. 2, § 4.[3] We received briefs on this issue from various parties, including parties arguing that the procedures in the Pretrial Order are constitutional (the Proponents) as well as parties asserting that they are unconstitutional (the Opponents).

## DISCUSSION

### I. Due Process

We begin our due process analysis by considering the notice procedures employed

1. The necessity of consolidation and expansion of the proceedings is dictated by practical considerations unrelated to and, in fact, quite different from judicial efficiency. It might indeed be more efficient to conduct separate adjudications, each with fewer parties. Reality tells us, however, that in a state with vast amounts of arid desert land, and with insufficient water to provide all inhabitants with all that they need— let alone desire—the allocation of water to one claimant, asserting rights to a stream that is a tributary to another, will inevitably result in a smaller allocation to another claimant to either the tributary or the main stream.

2. The petitions for review were filed pursuant to our Special Procedural Order Providing for Interlocutory Appeals and Certifications (September 26, 1989). That order was issued pursuant to Ariz. Const. art. 6, § 5, A.R.S. §§ 45–259 and 12–2101, and Rule 19(a)(3) and (f), Ariz.R.Civ. App.P., 17B A.R.S. The Special Procedural Order is reproduced in Appendix A.

The Special Procedural Order was promulgated to provide a mechanism to review the important legal decisions of the trial court as promptly as practicable at the outset of the adjudication. In a case of this magnitude, which is expected to continue for at least three or four decades, it is imperative that any significant error be corrected immediately to avoid conducting forty years of litigation only to dis-

cover the need to begin anew. As we stated in the Special Procedural Order:

A general adjudication of water rights ... is a lengthy proceeding that requires investment of vast public and private resources. There is a need to provide for discretionary appellate review of interlocutory decisions of the trial court in this proceeding to avoid the waste that might otherwise occur if significant interlocutory decisions were only reviewable after final judgment, which might not be entered for several years.

Special Procedural Order (Appendix A) at 8. Finally, the Special Procedural Order "is the exclusive remedy for the presentation of interlocutory issues to this court in this adjudication...." *Id.* at 6. In certain circumstances, such interlocutory decisions are reviewable by the United States Supreme Court. *See Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 477– 487, 95 S.Ct. 1029, 1037–42, 43 L.Ed.2d 328 (1975).

3. The relevant clause of the fourteenth amendment to the federal constitution reads: "nor shall any State deprive any person of life, liberty, or property, without due process of law." The Arizona Constitution similarly provides that "[n]o person shall be deprived of life, liberty, or property without due process of law."

at the initiation of this adjudication. We then address the notice and filing procedures of the Pretrial Order.[4]

## A. The Initiation of the Adjudication

### 1. *Notice by Summons and Publication*

The SLD and the Arizona Department of Water Resources (DWR)[5] compiled a mailing list for the service of the summons by translating United States Geological Survey topographical maps of the watershed areas into assessor format. The Arizona Department of Revenue (DOR), the central depository for county assessors' real property records, took the assessor-format list and developed a list of the names and addresses of all property owners in the watersheds. The summons was sent via certified mail, return receipt requested, as mandated by A.R.S. § 45–253(A)(2),[6] to each person on this mailing list. *See, e.g.,* San Pedro River Watershed Water Rights Adjudication Notification Process Report, WC–79–0001 to –0004, consolidated, Docket No. 1155, at 3 (hereinafter San Pedro Notification Report).[7] A notification package, which included, *inter alia,* a copy of the summons and a statement of claimant form, was also sent by certified mail to federal, state, and local governments and agencies, Native American communities, and irrigation districts within the watersheds. *Id.* at 3, 6. Finally, all well owners of record and all known holders of water rights within the watersheds were sent, among other information, instructions relating to the adjudication process and a statement of claimant form via first class mail. *Id.* at 7.[8]

Together, SLD and DWR mailed over *849,000* summons informing recipients of the pendency of the adjudication and notifying them of the procedure for submitting their water rights claims. This mailing constituted the statutorily-mandated notification of "all known potential claimants." A.R.S. § 45–253(A)(2); *see also* former A.R.S. §§ 45–232, 45–234, 45–235.[9]

---

4. As to the issue of whether the parties received notice of the Pretrial order itself, we note that the Pretrial Order by its terms commands the Arizona Department of Water Resources (DWR) to notify all parties to the adjudication of the availability of copies of all documents and of the existence of the Pretrial Order, the docket system, and the subscription system. Pretrial Order at 7. DWR was also to publish this notification in appropriate newspapers. *Id.* at 8. There is no suggestion that DWR has failed to carry out these requirements.

5. The current statutes (A.R.S. §§ 45–251 to 45–260) assign DWR the role in compilation played by SLD under the former statutes. Accordingly, SLD compiled the lists for the mailing of summons for the Upper Salt and San Pedro River adjudications, and DWR compiled the lists for the later-initiated adjudications.

6. Section 45–253(A)(2) provides in relevant part as follows:

> Upon identifying the potential claimants pursuant to § 45–256, subsection A, paragraph 1, the director [of DWR] shall effect service on all *known potential claimants* by mailing a copy of the summons by registered or certified mail, return receipt requested, to such known potential claimants.

*See also* former A.R.S. § 45–234 (requiring service by registered mail).

7. The docket filing system is explained *infra* at 240, 830 P.2d at 452 and in Appendix C.

8. The process for assembling the list for mailing the summons became more sophisticated during the later-initiated adjudications. After DWR received the list of property owners from the DOR, it sent letters to all of the title and trust companies that appeared on the list, requesting that they return lists of the beneficial owners of the properties; DWR incorporated the information from these responses into the mailing list.

The current statutory procedure for assembling the list of persons to be sent a summons is contained in § 45–256(A)(1), which requires DWR to

> [i]dentify the hydrological boundaries of the river system and source and the names and addresses of all reasonably identifiable potential claimants. In identifying potential claimants, the director shall, at a minimum, identify as far as reasonably possible the current record owners of all real property within the geographical scope of the adjudication.

We note that even the notifications sent pursuant to the former statute satisfy this current requirement.

9. Each of the general adjudications comprising this consolidated adjudication was initiated at a different time, so the initial service of summons for each was handled separately. In addition, the notification process for the San Pedro and Upper Salt Rivers was initiated under the former statutory scheme, and the notification for the other rivers commenced under the new statutes. As a practical matter, however, the notification procedure actually employed was substantially the same for each river system, the principal difference being the number of weeks

SLD and DWR also provided notice of the adjudication by publication. *See* A.R.S. § 45–253(B); former A.R.S. § 45–232. Various legal notices were published in newspapers in communities in or near the watershed areas. For the San Pedro River adjudication, for example, the following notices were among those published (including, in parentheses, the number of consecutive weeks of once-a-week publication):

1. Statement of initiation of adjudication (two weeks).

2. Rules, dates, and places for taking testimony (*i.e.*, submitting statements of claimant) (two weeks).

3. Order extending filing deadline and setting subsequent places for submitting statements of claimant (four weeks).

4. Extension of filing deadline (four weeks)

5. Republication of summons, prior orders (four weeks).

San Pedro Notification Report at 3–6.

Persons who received the summons—as well as persons who otherwise received actual notice of the adjudication—and who did not submit statements of their claims before the applicable deadline now may be precluded by statute from asserting any claims to rights in the adjudicated watersheds. *See* A.R.S. § 45–254(E).[10] The statutory treatment of persons who did not receive actual notice of the pending adjudication is more lenient: such persons may

intervene in the adjudication by filing their claims within one year of the deadline for the filing of claims by persons with actual notice. *See id.*[11]

### 2. *Sufficiency of the Notice Given*

The issue of due process arises because those persons who did not receive actual notice of the adjudication may, under § 45–254(E), lose claims to water rights without having an opportunity to defend their claims. Water rights are property rights. 6 Edward Clyde, *Waters and Water Rights* § 530 (R. Clark ed. 1972); A. Dan Tarlock, *Law of Water Rights and Resources* § 7.06[1][b] (1991); 93 C.J.S. *Waters* § 1 (1956 & Supp.1991); *id.* § 181 ("although a water right may be incorporeal, and only a right to the use of the water, it is, nevertheless, a private property right which will be treated and protected as such"); *see also Gillespie Land & Irrig. Co. v. Buckeye Irrig. Co.,* 75 Ariz. 377, 257 P.2d 393 (1953). Consequently, holders of water rights are constitutionally entitled to due process in any adjudication that could deprive them of those rights. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950) ("deprivation of ... property by adjudication [must] be preceded by notice and opportunity for hearing appropriate to the nature of the case"); *Mervyn's Inc. v. Superior Court,* 144 Ariz. 297, 300, 697 P.2d 690, 693 (1985) ("[A]ny procedure

---

of newspaper publication employed to give notice to all unknown potential claimants. *Compare* A.R.S. § 45–253(B) (publication for four consecutive weeks) *with* former A.R.S. § 45–232 (publication in two issues). We do not distinguish between the different river systems in our discussion because we do not believe the differences in service are significant to our analysis. Nevertheless, because the notice procedures became more sophisticated over time, *see supra* note 7, we address our analysis to the earliest procedures employed. If those procedures pass constitutional muster, the later ones certainly do.

**10.** Section 45–254(E) provides in part as follows:

Any potential claimant properly served who fails to file a statement of claimant in accordance with the requirements of this article shall be barred and estopped from subsequently asserting any right theretofore ac-

quired upon the river system and source and shall forfeit all rights to the use of water in the river system and source theretofore claimed by him.

**11.** The relevant part of § 45–254(E) provides that

[a]ny potential claimant who did not have actual knowledge or notice of the pendency of the proceedings may, at any time within one year of the date, as set forth in the summons, by which statements of claimant must be filed, move to intervene in the general adjudication, if his motion to intervene contains all matters required of claimants and an affidavit that the intervenor had no actual knowledge or notice of the pendency of the proceedings. Such motion to intervene shall be granted upon such terms as are equitable, and the movant thereafter shall have the rights of a claimant in the general adjudication.

which deprives an individual of a property interest must satisfy due process.").

■ Notice is sufficient for due process purposes if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" or claims. *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657. In *Mullane*, the Supreme Court considered a statute permitting notice by publication to beneficiaries concerning an accounting of their interests in a common pool of 113 trusts. *Id.* at 307–310, 70 S.Ct. at 654–55. The Court held that due process required notice by mail to all beneficiaries who could be located through reasonable efforts.

### a. *Property Owners*

■ In the present case we have no doubt that the notice of the adjudication was constitutionally sufficient as to those potential claimants who received the summons by certified mail. Of more concern are those property owners who, for one reason or another, did not receive a summons by mail. We are convinced, however, that these persons were accorded due process through the notices published in the newspapers. Although notice by publication is not sufficient due process for persons whose identity and address could be established through reasonable efforts, *Mullane*, 339 U.S. at 318, 70 S.Ct. at 659, publication notice *is* sufficient for those persons "whose interests or whereabouts could not with due diligence be ascertained." *Id.* at 317, 70 S.Ct. at 659. SLD and DWR's efforts in assembling the mailing list and serving 849,000 summons on all record owners of property in the watersheds meet the standard of due diligence and demonstrate that the agencies' endeavors to notify interested persons went far beyond mere pretense. *See id.* at 315, 70 S.Ct. at 657 ("[P]rocess which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."). *Cf. Pioneer Fed. Sav. Bank v. Driver*, 166 Ariz. 585, 589, 804 P.2d 118, 122 (Ct.App.1990)

(publication notice insufficient where mortgagee failed to consult "readily available sources" for mortgagor's address before obtaining default deficiency judgment).

### b. *Lienholders*

■ The Opponents argue that the procedures for notifying potential claimants were constitutionally infirm because holders of liens on real property with appurtenant water rights—potential claimants whose identities were reasonably ascertainable—were not included on the mailing list for the service of the initial summons. We disagree.

The United States Supreme Court has held that a reasonably identifiable mortgagee is entitled to personal service or mailed notice informing it of a pending tax sale and of its statutory redemption right. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). We recognize that mortgagees and other lienors have a property right, the value of which could be diminished by the loss of water rights appurtenant to the encumbered property, and that they are therefore entitled to due process under *Mennonite.*

"Once it is determined that due process applies, the question remains what process is due." *Goss v. Lopez*, 419 U.S. 565, 577, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). Because the decision in *Mennonite* was "controlled by the analysis in *Mullane*," *Mennonite*, 462 U.S. at 798, 103 S.Ct. at 2711, we look to *Mullane* to determine whether, under the circumstances, the mortgagees and other lienholders who received notice by publication were accorded due process. *See Rosewell v. Chicago Title & Trust Co.*, 99 Ill.2d 407, 76 Ill.Dec. 831, 834, 459 N.E.2d 966, 969 (1984) (construing "*Mennonite* as a decision in line with *Mullane*" and focusing on the adequacy of the procedural requirements of Illinois' tax sale statute), *appeal dismissed*, 467 U.S. 1237, 104 S.Ct. 3503, 82 L.Ed.2d 813 (1984). *Mullane* held, as we have recognized above, that due process requires

that "notice be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." 339 U.S. at 314, 70 S.Ct. at 657, quoted in *Dixon v. Picopa Constr. Co.*, 160 Ariz. 251, 261, 772 P.2d 1104, 1114 (1989).

*Mullane* cautioned, however, that "[a] construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified." *Mullane*, 339 U.S. at 314, 70 S.Ct. at 647. We believe that requiring SLD and DWR to search title records for the names of all mortgagees and lienholders on approximately 800,000 parcels of land, and then to mail the initial summons to all of them, would have constituted an unreasonable burden. *See Rosewell*, 76 Ill.Dec. at 833–34, 459 N.E.2d at 968–69 ("The names and addresses of the party against whom the taxes were last assessed is readily available in the county tax records; the addresses of all mortgagees, lienholders and other interested parties can only be ascertained by costly and time-consuming title searches on the 121,000 delinquent parcels of land."). *Cf. Schroeder v. New York*, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (publication notice insufficient for due process where owner of condemned property readily determinable from deed and tax records). For the mortgagees and other lienors, notice by publication met the requirements of due process.[12]

### c. *Lessees and Permit Holders*

■ The Opponents also argue that another group of potential claimants—lessees of state and federal land and government permit holders—were denied due process because their identities were reasonably ascertainable yet they were not specifically included on the mailing list for the service of the initial summons. We do not agree. First, most or all lessees and permittees of the federal government were likely to have been included on the SLD and DWR mailing lists of real property owners because federal regulations make ownership of pri-

vate "base property" a prerequisite to the receipt of grazing and livestock permits. *See* 43 C.F.R. §§ 4110.1, 4110.2–1 (1990) (Bureau of Land Management regulations); 36 C.F.R. §§ 222.1(b)(3), 222.3(c) (1990) (Forest Service regulations); *Garcia v. Andrus*, 692 F.2d 89, 91 (9th Cir.1982) (discussing "base property").

Second, we have balanced the uncertain and, at most, derivative interests of such persons in the water rights adjudication against the difficulty and expense of identifying and serving them. *See Tulsa Professional Collection Servs. v. Pope*, 485 U.S. 478, 484, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988) ("The focus is on the reasonableness of the balance, and, as *Mullane* itself made clear, whether a particular method of notice is reasonable depends on the particular circumstances."); *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657 (balancing state's interest in its notice procedures against individual interest to be protected by due process). We conclude that in these circumstances publication notice to lessees and permittees was sufficient for due process. *See Mullane*, 339 U.S. at 317, 70 S.Ct. at 659 (not "unreasonable for the State to dispense with more certain notice to those [interested persons] whose interests are either conjectural or future"); *see also Matter of Rights to Use Waters of Yakima River*, 100 Wash.2d 651, 674 P.2d 160 (1983) (due process does not require service of process on all individual water users who receive water from distributing entities; service on those entities sufficient).

### 3. *The Content of the Summons and Published Notices*

■ The issue of notice for due process purposes is not merely a question of the mode of notification employed. Due process also requires that the notice "be of such nature as reasonably to convey the required information." *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657. That is, the content

---

**12.** We note that the Pretrial Order mandated that DWR file and record a general notice of *lis pendens* in all counties that are part of the watershed subject to this adjudication. Pretrial Order at 8. This was an additional step taken to notify institutional lienors and title companies, who customarily research the public records, of the pendency of the adjudication.

of the notice must be sufficient to "apprise interested parties of the pendency of the action" and to make them aware of the "opportunity to present their objections." *Id.*

We believe that the summons more than adequately informed potential claimants of the nature of the proceedings. The summons opened, for instance, with the following statement:

> You are hereby summoned and required to appear and to assert any claims to water that you may have in the Lower Gila River Watershed, on or before January 20, 1987. The above action is a general adjudication of rights to use water in the Gila River System and Source in which all rights to use water appropriable under A.R.S. Sec. 45–131 and water subject to claims based upon federal law will be determined pursuant to Sec. 45–251 *et seq.*[13]

The summons also contained basic information on the purpose and scope of the adjudication, instructions on acquiring and filing the forms for statements of claimant, notice that failure to file such statements would result in claim preclusion, the deadline for filing, and references to the statutory bases for the adjudication. *See Closed Basin Landowners Ass'n v. Rio Grande Water Conserv. Dist.*, 734 P.2d 627, 633–34 (Colo.1987) (content of published summary of filings sufficient notice under *Mullane*).

The Opponents argue that the content of the notice afforded potential claimants was constitutionally deficient for two reasons: first, because the summons did not inform potential claimants of rights to effluent and groundwater that such claims might be subject to the adjudication; and second, because the summons did not provide sufficiently specific information about the issues they would be required to litigate.

### a. *Effluent*

■ The Opponents argue that the summons was deficient because it did not specify that the rights of those "treating, producing, or utilizing effluent" could be affected by the adjudication. It is true that the summons did not specifically mention effluent, but we do not believe it follows that the summons was therefore constitutionally inadequate.

The summons stated that the general adjudication would determine "all rights to use water appropriable under [then] A.R.S. Sec. 45–131." Section 45–131, which has since been renumbered as § 45–141,[14] provided that:

> The *waters of all sources*, flowing in streams, canyons, ravines or other natural channels, or in definite underground channels, whether perennial or intermittent, flood, *waste or surplus water*, and of lakes, ponds and springs on the surface, belong to the public and *are subject to appropriation* and beneficial use....

(Emphasis added.)[15] We believe that the reference in the summons to "all rights to use water appropriable under A.R.S. Sec. 45–131," coupled with that section's provision that "waters of all sources ... are subject to appropriation," was sufficient to put effluent users on notice that the right to use effluent was subject to this adjudication and that such users should file their claims.

### b. *Groundwater*

■ We also reject the Opponents' contention that the summons provided inadequate notice to potential claimants of rights to use groundwater. The summons specifically instructed that all groundwater users should "inform the Court of their groundwater use on the appropriate court-approved statement of claimant form to defend that use in the event that other claim-

---

**13.** This language comes from the summons mailed to potential claimants in the Lower Gila River adjudication (case No. W–1). A more complete excerpt from this summons is included in Appendix B.

**14.** *See* Laws 1987, ch. 2, § 1.

**15.** Indeed, our holding in *Arizona Public Service v. Long*, 160 Ariz. 429, 437, 773 P.2d 988, 996 (1989), that effluent, although neither groundwater nor surface water, is appropriable once returned to a stream was explicitly based on the "waters of all sources language" in A.R.S. § 45–141.

ants assert that the groundwater is either appropriable under A.R.S. Sec. 45–131 or subject to claims based upon federal law." [16] In addition, the instructions accompanying the statement of claimant forms explicitly stated that all groundwater users should file claims. Assuming that groundwater users were constitutionally entitled to notice, they were sufficiently notified of the need to file claims.

The Opponents argue further that the notice was inadequate to inform "owners of real property that this adjudication might adversely impact the right to develop and use such groundwaters at some future date," and that they should therefore file statements of claimant forms. Separate Brief on behalf of Arizona Public Service Co., Magma Copper Co., and Farmers Investment Co. at 4. In support of this argument, the Opponents point out that the summons refers to groundwater *users*, implying current rather than current *and future* groundwater users. They also point to language in DWR's instructions for filing statement of claimant forms that might have dissuaded this group of potential future users from filing claims:

> Should a claim be filed for some potential future use?
>
> No. Under the Arizona system of water law, water rights cannot be established or reserved for some potential future use. Water rights can only be established through proper legal appropriation and putting the water to actual beneficial use.

*Id.* at 10.

We do not believe this rendered the summons inadequate. First, it would hardly have been possible for the drafters of the summons to predict and account for the consequences of every potential future legal determination, or to recognize and address directly every subset of potential water claimants. *Cf. Mullane*, 339 U.S. at 317, 70 S.Ct. at 659 (not "unreasonable for

the State to dispense with more certain notice to those [interested persons] whose interests are either conjectural or future").

■ Second, we believe that the instructions contain a correct statement of the law and were not misleading. Appropriative water rights are based on current beneficial use, not reservation for future uses. *See* A.R.S. § 45–141(B) ("Beneficial use shall be the basis, measure and limit to the use of water."). Consequently, real property owners claiming a right to use underground water at some future time would— absent present beneficial use or a claim based on federal law—have no *appropriative* claims to assert in the adjudication.

■ Finally, the summons informed property owners that the legal issue of when underground water is appropriable might be litigated in the adjudication. The instructions merely recited the then current state of the law: Arizona law recognized no right to reserve water for some potential future use. *See* John D. Leshy & James Belanger, *Arizona Law Where Ground and Surface Water Meet*, 20 Ariz. St.L.J. 657, 698 (1988). Those wishing to contest that general principle were not asserting a right to property; Arizona law recognized no such property right. *See id.*; *Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 82, 638 P.2d 1324, 1328 (1981). Those wishing to contest the validity of the general law or argue for a change were— and are—free to petition to intervene or to appear as *amicus* and present their arguments. Having no legally recognized property right in potential, future groundwater use, they have no due process rights of which they can be deprived by the summons or the instructions which accompanied it.

### c. Specificity of the Summons

The Opponents' final due process argument regarding the summons is that the notice to *all* potential claimants was constitutionally inadequate because the summons

---

**16.** A separate interlocutory appeal addresses the issue of when underground water is subject to   appropriation.

did not adequately inform them of the specific issues they must be prepared to meet. The Opponents cite *Nelson v. Jacobsen,* 669 P.2d 1207, 1212 (Utah 1983), in which the court held that notice of an impending trial to an "unrepresented defendant [was constitutionally deficient] because it described the nature of the proceedings against him in such ambiguous terms that it deprived him of adequate time to prepare his defense." The *Nelson* court itself, however, recognized that due process "is not a technical concept that can be reduced to a formula with a fixed content unrelated to time, place, and circumstances." *Id.* at 1213. Indeed, in reaching its ruling, the court was particularly concerned that the defendant, who did not realize that an order setting a "hearing" actually referred to the scheduling of a jury trial, was unrepresented and that the notice was "ambiguous or misleading." *Id.* The decision in *Nelson* was thus directed at a specific set of circumstances and did not pronounce a rule for all cases. Our decision, grounded, like *Nelson,* in the principles of *Mullane,* is directed at a different set of circumstances. *Nelson* does not alter our belief that the summons adequately and unambiguously informed potential claimants of the nature of the proceeding and the steps that they had to take, at the threshold, to preserve their claims.

B. Pleading—The Provisions of the Pretrial Order Dealing With the Filing and Service of Pleadings [17]

■ The Pretrial Order provides detailed procedures for the filing and service of pleadings, motions, and all other documents, except the statements of claimant.[18] Each party is required, as in other cases, to file a copy of any document with the clerk of the trial court. Documents need not, however, be served on every party to the adjudication, but must only be mailed to all parties on the trial court's

approved mailing list. There are two ways that the other parties may receive notice of the documents filed. First, parties may file a written request with the court to be included on the court-approved mailing list. Second, parties may keep abreast of all filings through the docket system instituted by the Pretrial Order.

The docket system functions as follows. The clerk of the trial court assigns a docket number to each document filed by any party to the adjudication. The clerk then adds the docket number, the title of the document, and any descriptive summary contained in the document to the docket sheet. On the first day of each month, the clerk provides a copy of the docket sheet identifying all documents filed during the preceding month to the clerk of the superior court in each county except Mohave County.[19] The clerk of each of these superior courts must post, in a conspicuous location in the clerk's office, either the complete docket sheet or a notice indicating the location in the clerk's office of the complete docket sheet available for inspection. The docket sheet, or a notice indicating where the complete docket sheet is available for inspection, is also to be posted in DWR's Phoenix office and the Pinal, Prescott and Tucson Active Management Area offices. In addition, the Pretrial Order mandated the establishment of a subscription system, through which any party that has appeared can receive a copy of the Pretrial Order and of each month's docket sheet in the mail by paying a fee to cover actual expenses.

To begin our analysis, we reiterate that due process requires that interested parties be given notice "reasonably calculated, *under all the circumstances,* to ... afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314, 70 S.Ct at 657 (emphasis added). In this case, any party that desired to receive service of every document filed had only so to inform

---

**17.** The procedures for filing and service of pleadings under the Pretrial Order are included in Appendix C.

**18.** The procedure for filing the statements of claimant is mandated by A.R.S. § 45–254.

**19.** The Pretrial Order excludes Mohave County presumably because none of the watersheds is located there.

the court and be placed on the court-approved mailing list. Other parties can keep themselves updated by consulting or subscribing to the monthly docket sheets. In addition, at certain critical stages of the adjudication, the Pretrial Order requires that the parties be given additional notice. For example, pursuant to A.R.S. § 45-256(C) and the Pretrial Order, DWR must provide each water claimant with adequate notice when DWR's preliminary Hydrological Survey Reports—and, later, the Comprehensive Report—are available for inspection and comment.

▆ Due process is not a static concept, but must account for "the practicalities and peculiarities of the case." *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657. The most significant factor in this case is the sheer multitude of the parties to the adjudication. In response to the summons and public notices, over 23,900 persons filed a total of more than 65,000 individual statements of claims.[20] As the trial judge explained,

> [s]trict [c]ompliance with the provision of Rule 5(a) of the Arizona Rules of Civil Procedure, requiring that nearly all papers filed with the Court subsequent to the original complaint [also] be served upon each of the parties, would work a severe financial hardship on many parties, and might discourage, or even prevent them from actively participating in this action.

Pretrial Order at 5. We agree. If each party were required to serve a copy of every document filed on each of the 24,000 other parties to the litigation, the cost of actively litigating a claim would be prohibitive to all but the largest water users. Such a result could not be required by due process, for, as we have already noted, "[a] construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified." *Mullane,* 339 U.S. at 313–14, 70 S.Ct. at 657.

A federal district court rejected a similar due process challenge to the constitutionality of Nevada's special statutory procedures for water adjudications in the pre-*Mullane* decision of *Humboldt Land & Cattle Co. v. Allen,* 14 F.2d 650 (D.Nev.1926), *aff'd without opinion,* 274 U.S. 711, 47 S.Ct. 574, 71 L.Ed. 1314 (1927). The *Humboldt* court rejected a claim that due process required parties to serve their objections to the state water engineer's report on every other party:

> To require each party dissatisfied with the engineer's order of determination, after filing his objections with the clerk, and serving them on the state engineer, to serve them also on every other party interested in the stream system, of whom there may be 500 or 600, or more, would impose an intolerable burden on the court as well as litigants. In many instances the cost of objecting would be prohibitive.

*Id.* at 653. Modern technology has greatly facilitated communication in the years since *Humboldt* was decided, but fundamental obstacles remain: the cost of having to serve each document on 24,000 parties is so prohibitive that it would impair or prevent, rather than promote, the assertion of claims. Requiring service of every document on every party would not further the ability of individuals to litigate their claims, but would instead place insurmountable obstacles in their paths. We therefore conclude that the filing and service provisions of the Pretrial Order are well-designed under the circumstances to afford the litigants adequate notice of all filings in the adjudication.

## II. The Authority for the Trial Court's Adoption of the Pretrial Order

▆ We still must determine whether the trial court was acting within its authority when it issued the filing and service procedures in the Pretrial Order. In December 1985, the trial court proposed the adoption of a scheduling order to aid in the management of this massive litigation.

---

**20.** The number of claims is larger than the number of persons responding because separate claim forms are required for each point of water diversion and each type of water use (irrigation, stockpond, domestic, or other use) for which a claim is made. *See* Appendix B (Summons).

The court's proposed order was circulated for comments and objections. The trial court received written comments from various parties and held two formal hearings at which all counsel who sought to be heard participated. The Pretrial Order that emerged from this process addressed not only procedures for the filing and service of pleadings, but also procedures for the filing, briefing, and scheduling of hearings on motions; steering committees to represent the various interests of the parties before the court; the identification and resolution of legal issues before trial; the timing of and procedures for discovery; the procedure for hearings on DWR's Hydrographic Survey Reports; and the projection of an overall schedule for the adjudication.[21]

The Arizona Rules of Civil Procedure govern general water adjudications unless they conflict with the water rights adjudication statutes. A.R.S. § 45–259.[22] It is to those rules that we turn.

Under the Rules of Civil Procedure, procedures for filing and serving pleadings (after service of process) are governed by Rule 5, which requires that every order, pleading, discovery paper, written motion, and other similar paper be served on every party to an action. Rule 5, Ariz.R.Civ.P., 16 A.R.S. (hereinafter Rule ——).[23] The filing and service provisions adopted by the trial judge in the Pretrial Order, requiring service only on the parties on the court-approved mailing list, are therefore in conflict with Rule 5. We believe, however, that the trial court properly adopted the special procedures for the filing and service of pleadings pursuant to Rule 16, which governs pretrial conferences and orders.[24]

---

21. *The procedures for the filing and service of pleadings are reproduced in Appendix C.*

22. Section 45–259 provides as follows:
   The general adjudication is governed in all respects by the ... *Arizona rules of civil procedure and any other procedural rules generally applicable to civil proceedings*, except that the specific provisions of this article govern if they conflict with the Arizona rules of civil procedure or any other procedural rules generally applicable to civil proceedings.

23. Rule 5 provides in relevant part:
   (a) Service: When Required. Except as *otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served on each of the parties.

   *   *   *   *   *   *

   (d) Service; Numerous Defendants. In any action in which there are unusually large numbers of defendants, the court, upon motion or of its own initiative, may order that service of the pleadings of the defendants and replies thereto need not be made as between the defendants and that any cross-claim, counterclaim, or matter constituting an avoidance or affirmative defense contained therein shall be deemed denied or avoided by all other parties and that the filing of any such pleading and service thereof upon the plaintiff constitutes due notice of it to the parties. A copy of every such order shall be served upon the parties in such manner and form as the court directs.
   Rule 5(d) contains an exception for cases involving multiple defendants, under which a trial judge may order parties to serve their pleadings on the court alone, and the numerous parties in water cases have been considered "numerous defendants" for the purpose of this rule under the Federal Rules of Civil Procedure:
   [A]ctions relating to the adjudication of water rights ... sometimes involve several hundred defendants. Very often in such actions, each defendant has a claim against all or some of the other defendants, and to require each defendant to serve each of the large number of defendants against whom he asserts a claim is frequently burdensome.
   2 James W. Moore et al., *Moore's Federal Practice and Procedure* ¶ 5.08 (2d ed. 1985). The exception in Rule 5(d), however, applies only to pleadings, and not to discovery documents, motions, and other papers. *See* 2 James W. Moore et al., *supra*, ¶ 5.08 (1985).

24. The trial judge specified in the Pretrial Order that it was adopted "[p]ursuant to the authority vested in this Court by A.R.S. § 45–259 and Rule 16(b) of the Arizona Rules of Civil Procedure."
   Rule 16 provides in relevant part as follows:
   (a) Pretrial Conferences; Objectives. In any action, the court may in its discretion direct the attorneys for the parties and any unrepresented parties to appear before it for a conference or conferences before trial for such purposes as:
     1. expediting the disposition of the action;

Rule 16 authorizes the trial judge to conduct pretrial consultations and conferences with attorneys and unrepresented parties and to issue scheduling and pretrial orders. Among the purposes of this active pretrial judicial participation are:

1. expediting the disposition of the action;

2. establishing early and continuous control so that the case will not be protracted because of lack of management....

Rule 16(a). The special filing and service provisions, along with the rest of the Pretrial Order, provide a comprehensive framework for the expeditious management of the adjudication. Such a purpose is squarely within the stated objectives of Rule 16.

Moreover, Rule 16 specifies matters appropriate for consideration at a pretrial conference, including:

9. the need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal problems, or unusual proof problems; and

10. such other matters as may aid in the disposition of the action.

Rule 16(c).[25] The filing and service provisions adopted by the trial court represent a

well-conceived attempt to reconcile the purpose of Rule 5 with the demands of an extremely unusual case. We conclude that the trial court was acting within the authority and discretion vested in it under Rule 16 in adapting Rule 5 to facilitate the conduct of the adjudication. It would be foolish to hold to the contrary, for such a holding would prevent a judge from adapting procedures to meet the exigencies of unusual cases, and could make it impossible to conduct such cases. Such an outcome would contravene the purpose of the rules. *See* Rule 1 (rules of civil procedure "shall be construed to secure the just, speedy, and inexpensive determination of every action.").

Finally, nothing in our decision in *State v. Lambright,* 138 Ariz. 63, 69, 673 P.2d 1, 7 (1983), *cert. denied,* 469 U.S. 892, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984), in which we held that the use of dual juries in a criminal trial was unauthorized as a local rule not approved by this court,[26] prevents a trial judge in a civil case from employing the case-management techniques authorized by Rule 16.

## CONCLUSION

The combination of postal and publication notice of the initiation of the adjudication satisfied the requirements of due

---

2. establishing early and continuing control so that the case will not be protracted because of lack of management....
(b) Scheduling and Planning. Upon its own motion or upon motion of the parties, the court may ... enter a scheduling order that sets deadlines for: joining other parties and amending pleadings; serving and hearing motions; and completing discovery.
The scheduling order may also include: the date or dates for conferences before trial, a final pretrial conference, and trial; and any other matters appropriate in the circumstances of the case.

\* \* \* \* \* \*

(e) Pretrial Orders. After any conference held pursuant to this rule, an order shall be entered reciting the action taken.
Section (a) of Rule 16 was amended in 1987, after the Pretrial Order was adopted, but the amendment did not alter the objectives of the pretrial conference.

**25.** The fact that the trial judge entered the Pretrial Order as a scheduling order under Rule 16(b), rather than under the pretrial conference

guidelines in Rule 16(c), does not alter our analysis. *See* 3 James W. Moore et al., *Moore's Federal Practice and Procedure* ¶ 16.01[8] (2d ed. 1985) (Committee Note of 1983 to Subdivision (b)) ("Even though subdivision (b) relates only to scheduling, there is no reason why some of the procedural matters listed in Rule 16(c) cannot be addressed at the same time, at least when a scheduling conference is held."). "Because Arizona has substantially adopted the Federal Rules of Civil Procedure, we give great weight to the federal interpretations of the rules." *Edwards v. Young,* 107 Ariz. 283, 284, 486 P.2d 181, 182 (1971).

**26.** We are assuming, *arguendo,* that this conclusion in *Lambright* has continued vitality given new techniques in case management. *See, e.g.,* Rule 16(c)(10), (17) (amended effective July 1, 1992). *See also Lambright,* 138 Ariz. at 77–78, 673 P.2d at 15–16 (special concurrence). We have not been asked in this case to reexamine the relevant portion of *Lambright.*

process as enunciated in *Mullane* and its progeny. In addition, the filing and service provisions in the Pretrial Order are constitutionally sufficient to keep all parties notified of documents filed in the adjudication. Finally, the trial court neither exceeded its authority nor violated the Arizona Rules of Civil Procedure when it entered the Pretrial Order containing the special filing and service provisions.

MOELLER, V.C.J., and CORCORAN, CAMERON (retired), GORDON (retired), JJ., concur.

### APPENDIX A

The Special Procedural Order Providing for Interlocutory Appeals and Certifications (Supreme Court; September 26, 1989), provides as follows:

### IN THE SUPREME COURT OF THE STATE OF ARIZONA

IN RE THE GENERAL ADJUDICATION OF ALL RIGHTS TO USE WATER IN THE GILA RIVER SYSTEM AND SOURCE

Action No. WC–1, WC–2, WC–3 and WC–4 (consolidated)

Maricopa County Superior Court Nos. W–1, W–2, W–3 and W–4 (consolidated)

SPECIAL PROCEDURAL ORDER PROVIDING FOR INTERLOCUTORY APPEALS AND CERTIFICATIONS

Pursuant to Article 6, § 5 of the Arizona Constitution, A.R.S. §§ 45–259 and 12–2101, and Rule 19(a)(3) and (f), Arizona Rules of Civil Appellate Procedure, 17B A.R.S., the following procedure is adopted for interlocutory appeals and certifications arising from this general adjudication:

### A. Scope

Any party to this general adjudication of water rights under A.R.S. § 45–251 *et seq.* may petition the Supreme Court to review by interlocutory appeal any ruling of the superior court. Also, the trial court may certify to the Supreme Court questions deemed substantial and properly the subject of interlocutory review or appeal under this rule.

### B. Grounds

The decision whether to grant or deny a petition for interlocutory review or appeal or certification shall be discretionary. In the exercise of its discretion the Supreme Court may consider, without limitation, the following factors:

1. That the ruling of the superior court is in conflict with a ruling from another adjudication proceeding pursuant to A.R.S. § 45–251 *et seq.;*

2. That the ruling has decided an important question of law that should be decided by the Supreme Court before further proceedings or final judgment in the trial court;

3. That substantial savings of time, expense, or resources may be achieved through early appellate review;

4. That the interests of justice otherwise require early appellate review;

5. Those factors described in Rule 23(c)(4), Ariz.R.Civ.App.P., 17B A.R.S., or Rule 3, Ariz.R.P.Spec.Act., 17B A.R.S.

### C. Time for Filing of Petition; Cross–Petition

A petition or certification seeking interlocutory review or appeal of a trial court ruling made prior to the effective date of this order shall be filed within one hundred fifty days after the effective date of this order. A petition or certification seeking interlocutory review or appeal of a trial court ruling made after the effective date of this order shall be filed within ninety days after the trial court's ruling. For purposes of this rule, the date of the trial court's ruling shall be the date on which the last motion for reconsideration or request for amendment and/or alteration, however denominated, is finally resolved, providing such motion is filed within thirty days after the date the trial court first ruled on the question. A cross-petition for an interlocutory appeal may be filed within thirty days after service of a petition or certification.

### D. Form and contents of petition, cross-petition or certification

To the extent possible, the petition, cross-petition or certification seeking interlocutory review or appeal shall comply in form and content with Rule 23(c), Ariz.R.Civ. App.P., 17B A.R.S. In addition, the petition or cross-petition shall contain a concise statement showing why the questions are ripe for interlocutory appeal.

### E. Service

The petition, cross-petition or certification shall be served in the same manner as the superior court pleadings in this general adjudication, as follows:

1. A copy of the petition, cross-petition or certification shall be mailed to all parties listed on the trial court's approved mailing list pursuant to Pre–Trial Order No. 1. A copy of the current approved mailing list shall accompany the petition. In addition, a copy of the petition, cross-petition or certification shall be filed in this general adjudication proceeding. A copy of the petition, cross-petition or certification shall be served on the judge or master who made the ruling in question and on the Arizona Department of Water Resources.

2. The Arizona Department of Water Resources shall promptly serve a copy of the petition, cross-petition or certification on the judge or master and clerk of any other superior court in which a general adjudication is pending, who shall then give appropriate notice of the pendency of such petition to the parties to that adjudication.

### F. Response

Within forty-five (45) days after service of a petition, cross-petition or certification, any party to the trial court proceeding may file a response, which shall comply in form and content with section (D) of this order and be served in the same manner as the petition, cross-petition or certification. Parties to other pending general adjudication desiring to participate in an interlocutory appeal shall file a motion for leave to intervene within forty-five (45) days after service of the petition pursuant to subsection (E)(2).

### G. Reply

Any party to the proceeding below may reply to any response within thirty (30) days after service thereof. A reply shall be served in the same manner as a petition.

### H. Order on petition; service

1. This court may issue its order on the petition, cross-petition or certification without oral argument. The order shall grant or deny review by interlocutory appeal and specifically list those questions, if any, granted. An order denying a petition or certification or any part thereof shall not have any precedential value.

2. The order granting or denying interlocutory appeal shall be served by the Clerk of the Supreme Court on the trial judge, the master, the petitioner, the cross-petitioner, if any, and all persons listed on the service list accompanying the petition, and shall be filed of record by the Clerk of the Superior Court.

3. An order granting review by interlocutory appeal shall also schedule a pre-submittal conference not sooner than sixty (60) days after the service of the order, as provided below.

4. The Supreme Court may, on its own motion or on motion of the parties, consolidate one or more petitions, cross-petitions, or certifications from the same or different general adjudication proceedings for any or all purposes.

### I. Pre-submittal conference

No later than twenty (20) days prior to the scheduled pre-submittal conference, each party desiring to participate in the interlocutory appeal shall file a notice of appearance in the Supreme Court. The trial court shall not be deemed a party to the appeal, nor shall it participate in the appeal in any respect, even if the appeal is based on its certification. The Supreme Court may designate the parties as appropriate and, in the case of a certification, may align the parties in accord with their true interest in the questions presented. At the presubmittal conference, the Su-

preme Court shall make orders regarding further briefing and oral argument, if any. It shall also determine what portion of the record will be required to be transmitted, the date of transmittal, the parties to join in the presentation of issues, and other appropriate matters.

### J. Standard of review

The standard of review to be applied to any interlocutory appeal under this rule shall be the same standard that would apply had the review been made following a final judgment in the adjudication proceeding.

### K. Costs and attorneys' fees

Unless provided by statute, there shall be no application for costs or attorneys' fees made to the Supreme Court in connection with a petition for review by interlocutory appeal or with an interlocutory appeal granted under this rule. However, Rule 25, Ariz.R.Civ.App.P., 17B A.R.S., is fully applicable to pleadings filed pursuant to this order. All other issues of costs and attorneys' fees, if any, shall abide the final resolution of the adjudication.

### L. Other procedures

1. Except as otherwise provided herein, the Arizona Rules of Civil Appellate Procedure shall apply to proceedings under this order. Insofar as may be necessary, the provisions of Rule 5, Ariz.R.P.Spec.Act., 17B A.R.S., concerning stays, *ex parte* orders, restraining orders, and injunctions shall also apply.

2. This order is the exclusive remedy for the presentation of interlocutory issues to this court in this adjudication, including those issues that otherwise might be presented pursuant to the Rules of Procedure for Special Actions.

### M. Priority

Insofar as possible, matters in this general adjudication shall be determined in preference to other civil matters.

### N. Filing date and extension of time periods

All pleadings in any proceeding under this order shall be deemed filed on the day of mailing if deposited in a United States Post Office or mailbox, addressed to the Clerk of the Supreme Court, within the time allowed for filing. The Court, on its own motion, or by motion of a party with good cause shown, may grant extensions of any of the time limits set out in this order.

### COMMENTS

Purpose. The purpose of this order is to establish a procedure for early review of all substantial questions in this general adjudication of water rights. Early appellate review may avoid wasteful trial court proceedings, may result in substantial savings of time or expense, or may for other reasons be in the interests of justice. The rule is not intended to be used for interlocutory appeal of individualized matters except where such an appeal might result in a ruling of general application that would advance the adjudication process.

Need. Existing procedure allows interlocutory considerations of trial court rulings in certain limited circumstances. Thus, A.R.S. § 12–2101 describes the appellate jurisdiction of the Arizona Court of Appeals with respect to final judgments and certain interlocutory orders. Rule 54, Ariz.R.Civ.P., 16 A.R.S., provides a certification procedure for making certain judgments final that would not otherwise be appealable. The Rules of Procedure for Special Actions permit discretionary review of interlocutory decisions where the decision is arbitrary, capricious, or an abuse of discretion, or where the trial court may be proceeding without, or in excess of, jurisdiction. None of these procedures, however, provides for discretionary appellate jurisdiction of the Supreme Court other than in these limited circumstances.

A general adjudication of water rights filed pursuant to A.R.S. § 45–251 *et seq.* is a lengthy proceeding that requires investment of vast public and private resources. There is a need to provide for discretionary appellate review of interlocutory decisions

of the trial court in this proceeding to avoid the waste that might otherwise occur if significant interlocutory decisions were only reviewable after final judgment, which might not be entered for several years.

Jurisdiction and authority. Article 6, § 5 of the Arizona Constitution provides that the Supreme Court shall have:

3. Appellate jurisdiction in all actions and proceedings except civil and criminal actions originating in courts not of record, unless the action involves the validity of a tax impost, assessment, toll, statute or municipal ordinance.

\* \* \* \* \* \*

5. Power to make rules relative to all procedural matters in any court.

Rule 19, Arizona Rules of Civil Appellate Procedure, 17B A.R.S., authorizes the Supreme Court to transfer appeals from the Appeals Court on its own motion. The adoption of this special procedural order will effectively transfer all interlocutory appeals under this order to the Supreme Court pursuant to Rule 19(f).

Service. Subsection (D) of the order provides for service of the petition on parties to the adjudication in the same manner as other pleadings are served. In addition, filing the pleading of record in the superior court proceedings will cause the petition to be listed in the clerk's docket summary, which is mailed monthly to subscribers and which is available in the clerk's office for review by any party.

Response/cross-petition. The response provides a party with the opportunity to support the petition or set forth the reasons why the petitions should not be granted. The response may also seek to narrow the scope of the interlocutory appeal if granted or to reformulate the matter for which interlocutory appeal is sought. The cross-petition may seek to have the court grant an interlocutory appeal of additional related questions if the petition or certification is granted. The cross-petition should make the same showing as required for the petition itself.

Order denying petition. Unless stated to the contrary, an order denying a peti-tion, cross-petition or certification is not intended to indicate that the Supreme Court approves of the trial court's ruling, but only that the Supreme Court has determined that there is an insufficient basis on which to grant review by interlocutory appeal. A subsequent petition, cross-petition or certification seeking interlocutory review or appeal of a ruling for which a previous petition has been denied may be entertained by the court, but only on a showing of a change of circumstances or additional grounds which could not, in the exercise of reasonable diligence, have been known at the time of the previous petition, cross-petition or certification.

Stay. The granting of a petition for an interlocutory appeal shall not stay the proceedings in the superior court unless expressly so ordered by the Supreme Court.

Dated this *26th* day of September, 1989.

/s/Stanley G. Feldman
STANLEY G. FELDMAN,
VICE CHIEF JUSTICE

## APPENDIX B

The Summons sent to potential claimants in the Lower Gila River adjudication (W–1) provided in part as follows:

You are hereby summoned and required to appear and to assert any claims to water that you may have in the Lower Gila River Watershed, on or before January 20, 1987. The above action is a general adjudication of rights to use water in the Gila River System and Source in which all rights to use water appropriable under A.R.S. Sec. 45–131 and water subject to claims based upon federal law will be determined pursuant to Sec. 45–251 *et seq.* A map of the geographic scope of that portion of the general adjudication which is the subject of this Summons is reproduced on the reverse side of this Summons. Pursuant to A.R.S. Sec. 45–254(E), "Any potential claimant properly served who fails to file a statement of claimant in accordance with the requirements of this article shall be barred and estopped from subsequently asserting any rights theretofore acquired upon the river system and source and shall forfeit

all rights to the use of the water in the river system and source theretofore acquired by him."

Claims to water rights may be asserted by filing the appropriate court-approved statement of claimant form with the Arizona Department of Water Resources, which pursuant to an order of the Superior Court of Maricopa County, has been authorized to, receive claims for the Clerk of the Court. There are four statement of claimant forms that have been approved by this Court for a general filing: an irrigation water rights form, a stockpond water rights form, a domestic water rights form, and a form for other water rights. You may obtain whichever forms you need for filing your claim(s) by completing and mailing the enclosed self-addressed "Statement of Claimant Form Request Card." All groundwater users should inform the Court of their groundwater use on the appropriate court-approved statement of claimant form to defend that use in the event that other claimants assert that the groundwater is either appropriable under A.R.S. Sec. 45–131 or subject to claims based upon federal law.

Unless an extension of time is granted by the Court, all statements of claimants must be filed with the Arizona Department of Water Resources, whose address is 99 East Virginia Avenue, Phoenix, Arizona 85004, on or before January 20, 1987, which shall be deemed a timely presentation of a claim pursuant to A.R.S. Sec. 45–254.

### APPENDIX C

The Pre–Trial Order contains the following procedures for the filing and service of documents:

### 5. FILINGS WITH CLERK OF COURT

#### A. *Definitions*

(1) "Descriptive summary" means a one-sentence statement in a document filed in this action that states the nature of the document, its relationship to any other document: (e.g., Response to X's Motion for Summary Judgment) the action or relief requested, the Statement of Claimant number of the party filing the document, the number of pages and date of filing.

(2) "Party" means a person or entity who files a Statement of Claimant or for whom a Statement of Claimant is filed, whether or not the Statement of Claimant complies with the requirements prescribed in A.R.S. § 45–254 or with the orders of this Court, and successors in interest to these individuals, who shall automatically be substituted as parties pursuant to Rule 25(d), Arizona Rules of Civil Procedure, except that party does not include a person or entity whom the Court has determined is not a party to this action.

(3) "Statement of Claimant Number" means a number and/or letters assigned by DWR identifying each claimant's claim in these proceedings.

#### B. *Special Procedure for Filing*

The Court notes that Strict Compliance with the provision of Rule 5(a) of the Arizona Rules of Civil Procedure, requiring that nearly all papers filed with the Court subsequent to the original complaint be served upon each of the parties, would work a severe financial hardship on many parties, and might discourage, or even prevent them from actively participating in this action. In light of the mandate of Rule 1 of the Arizona Rules of Civil Procedure that the Rules be construed "to secure the just, speedy, and inexpensive determination" of "every action," for the purpose of this action compliance with the procedures set forth below shall constitute full compliance with Rule 5(a). Unless otherwise ordered by the Court, the following procedures shall apply to all documents filed in this action, except Statements of Claimant.

#### (1) *Clerk of the Superior Court for Maricopa County*

The Clerk of the Superior Court for Maricopa County shall:

a. Assign a number to each document, other than Statements of Claimant, filed in this action prior to and subsequent to the consolidation.

b. Maintain a docket sheet for all documents identified in paragraph 5.B.1.(a) above. The docket sheet shall be updated bi-weekly and shall include the number or letter assigned to the party and document, the complete title of the document and any descriptive summary contained in the document.

c. Within thirty (30) days after the effective date of this Order, provide to the DWR and the Clerk of the Superior Court of Arizona in each county, except Mohave County, a copy of the docket sheet for this action identifying all documents filed in this action prior to the effective date of this Order.

d. On the first day of each month that falls after the date the Clerk of the Superior Court for Maricopa County provides the docket sheet required by paragraph 5.B.1.(c) above, provide to the DWR and the Clerk of the Superior Court of Arizona in each county, except Mohave County, a copy of the docket sheet for this action identifying all documents filed in this action during the preceding month.

e. Any document presented for filing, other than a Statement of Claimant, shall not be accepted by the Clerk unless it is accompanied by a Certificate of Mailing which states that copies of the document presented have, in fact, been mailed or delivered to all those designated in paragraph 5.B.(4) hereafter listed and all those designated on the Court's approved mailing list. The Clerk shall have available copies of the mailing list and shall provide a copy to any party upon request and payment of a fee set by the Clerk to defray the cost of providing such copies.

### (2) *Clerk of the Superior Court for Each County Except Mohave County*

The Clerk of the Superior Court for each county, except Mohave County, shall post in a conspicuous location in the Clerk's office the complete docket sheet for this action or a notice indicating where in the Clerk's office the complete docket sheet is available for inspection.

### (3) *Department of Water Resources (DWR)*

The DWR shall:

a. Post in a conspicuous location in the Phoenix office of the DWR and in the Pinal, Prescott and Tucson Active Management Area offices the complete docket sheet for this action or a notice indicating where in the office the complete docket sheet is available for inspection.

b. Within forty-five (45) days after the effective date of this Order, send by first class mail a notice to each party to this action. The notice shall also be mailed together with Statement of Claimant forms to each person who requests such forms from the DWR after the date of this Order. The notice shall state:

(1) Where the complete docket sheet for this action is available for inspection.

(2) That copies of documents filed in this action are available from the DWR for the DWR's normal copying charge plus any applicable mailing fee.

(3) That the Court has entered a pre-Trial Order regarding procedures to be followed in this adjudication.

(4) That the DWR will mail a copy of each month's docket sheet and the Pre-Trial Order(s) to a party upon payment of a fee to be established by the DWR to cover actual expenses.

c. Within forty-five (45) days after the effective date of this Order, publish or cause to be published in newspapers of general circulation serving all areas covered by this adjudication a copy of the notice described in paragraph 5.B.3.b. above.

d. Upon receipt of a Statement of Claimant filed by a person who was not previously a party to this action, send to each such additional party by first class mail a notice containing information required by paragraph 5.B.(3).b. above.

e. Provide to any person a copy of a document filed in this action upon the payment of DWR's normal copying charge plus any applicable mailing fee.

f.  Mail a copy of each month's docket sheet to a party who pays a fee established by the DWR to cover actual expenses.

g.  Mail a copy of any document or paper filed by it in these proceedings to all addressees on the Court mailing list.

h.  File with the Clerk of the Court in each county, except Mohave County, on behalf of all parties in a form to be approved by the Court a Notice of Lis Pendens which shall describe the property encompassed, the nature of these proceedings, and the effect thereof as to any water rights the property may have or may claim to have.  The DWR shall also cause the Notice of Lis Pendens to be recorded in the office of the County Recorder of each county in which any part of any "river System and Source" included in these proceedings is located.

### (4) *Parties*

a.  A party to this action shall:

(1) File the original of a document permitted or required to be filed in this action with the Clerk of the Superior Court for Maricopa County, provide one copy of the document to the Court, two (2) copies to the DWR and one copy to each party against whom the matter is addressed or from whom relief is sought.

(2) Mail a copy to each party on the Court's approved mailing list of each document other than the Statement of Claimant Form.

(3) For each document filed in this action, set forth immediately after the caption a descriptive summary of the document.

(4) For each document filed set forth, immediately below the descriptive summary, the parties identifying Statement of Claimant number.

6.  SERVICE OF PLEADINGS AND OTHER PAPERS FILED

Each party shall mail a copy of any document other than a Statement of Claim Form to all parties listed on the Court's approved mailing list.  Each party who is currently on the Court's mailing list in this action shall serve a copy of any pleading or paper filed with the Clerk of the Court upon all other parties currently on the mailing list.

All parties desiring to remain on or be placed on the Court's approved mailing list may do so by filing a written request with the Court, within 30 days of the effective date of this Order.  Copies of the request shall be mailed to all persons then on the mailing list, stating the intention to take an active part in the litigation, its need to be on the approved mailing list and to receive all copies, and an agreement to serve on such steering committees as shall hereafter be formed.  Any person making such a request shall thereafter be obligated to provide copies of any document or pleading it files in this action to all other persons on the mailing list.