STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
MICHAEL RALPH CORSI, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. RALPH
BELVERIO, DEFENDANT-APPELLANT.

Argued March 10, 1981—Decided May 28, 1981.

*M. Virginia Barta,* Assistant Deputy Public Defender, argued the cause for appellant Ralph Belverio (*Stanley C. Van Ness,* Public Defender, attorney).

*Jeffrey P. Blumstein,* Designated Counsel, argued the cause for appellant Michael Ralph Corsi (*Stanley C. Van Ness,* Public Defender, attorney).

*Kenneth N. Lipstein,* Deputy Attorney General, argued the cause for respondent (*Judith A. Yaskin,* Acting Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

SULLIVAN, J.

Defendant Michael Corsi and defendant Ralph Belverio were convicted of conspiracy to commit robbery in violation of *N.J. S.A.* 2A:98–1, armed robbery with a dangerous instrument in violation of *N.J.S.A.* 2A:141–1 and *N.J.S.A.* 2A:151–5 and murder in violation of *N.J.S.A.* 2A:113–1 and –2. In addition, defendant Belverio was convicted of atrocious assault and battery in violation of *N.J.S.A.* 2A:90–1. The trial judge merged all of the convictions and sentenced each defendant to a term of life imprisonment in State Prison on the murder convictions.

The charges were based on a brutal assault on the victim of the robbery with a tire iron, resulting in his death about two weeks later. Corsi and Belverio were tried jointly before separate juries sitting in the same courtroom. The reason for this was that part of the State's case against Corsi included the testimony of State's witness Victor Giaimo that Corsi had told him of his (Corsi's) and Belverio's involvement in the particular criminal episode. This evidence was admissible against Corsi but could not be used against Belverio because of his right,

secured by the Confrontation Clause of the Sixth Amendment, to cross-examine the declarant of an out-of-court statement inculpating him.[1] See *Bruton v. United States*, 391 *U.S.* 123, 88 *S.Ct.* 1620, 20 *L.Ed.2d* 476 (1968). Belverio, in a pretrial motion, had asked for separate trials or, in the alternative, for a two-jury trial. Belverio rested his motion directly on the *Bruton* rule. Corsi, who was the driver of the car used during the criminal episode, did not have standing to raise the *Bruton* issue. He joined in the motion, however, claiming he was unaware of the criminal plans of his associates and that a joint trial before a single jury might result in his being found guilty by mere association with the actual criminals.

The trial judge denied the motions for severance but granted the application for a two-jury trial because of the *Bruton* problem. During jury selection, counsel for Belverio again moved for a severance. This motion was denied and two juries were drawn, one for Belverio and the other for Corsi. Separate openings and closings were made. Evidence relating to both defendants was presented to the two juries jointly. The *Bruton* problem was handled by having the Belverio jury withdrawn from the courtroom when evidence admissible only against Corsi was presented. The court charged each jury separately, each jury deliberated separately and separate verdicts were returned. As heretofore noted, both defendants were found guilty and sentenced to life imprisonment. The Appellate Division affirmed the judgments of conviction.

In the petition for certification filed on behalf of defendants, it was stated that:

> The question presented to this court is whether the procedure adopted by the trial judge in trying the two defendants simultaneously before separate juries was prejudicial to the defendants. The issue was raised as plain error because the suggestion of using two juries was made by defense counsel with the acquiescence of the prosecutor.

Certification was granted to consider this question, 85 *N.J.* 461 (1980). We now affirm.

---

[1]Neither Corsi nor Belverio took the witness stand.

The basic issue is whether the procedure adopted by the trial court in its effort to avoid a *Bruton* problem prejudiced defendants' right to a fair trial.

Prior to *Bruton*, this Court, in *State v. Young*, 46 *N.J.* 152 (1965), had held that at a joint trial of co-defendants where the State introduced an out-of-court confession of one defendant which also implicated a co-defendant, an instruction to the jury that the confession had evidential value solely against the declarant was inadequate to protect the co-defendant's right to a fair trial. 46 *N.J.* at 156–157. In *Young*, we outlined the procedure to be used at a joint trial, if the State intended to use a defendant's confession which implicated a co-defendant. It required the State, prior to trial, to move for a judicial determination of whether there could be an effective deletion of all references to any co-defendant without prejudice to the confessing defendant. If this was not feasible, and the State still intended to use the confession, separate trials were to be ordered. 46 *N.J.* at 159. This procedure was subsequently incorporated in *R.* 3:15–2, which now provides:

> (a) Motion by State Before Trial. If 2 or more defendants are to be jointly tried and the prosecuting attorney intends to introduce at trial a statement, confession or admission of one defendant involving any other defendant, he shall move before trial on notice to all defendants for a determination by the court, in camera, as to whether such portion of the statement, confession, or admission involving such other defendant can be effectively deleted therefrom. The court shall direct the specific deletions to be made, or, if it finds that effective deletions cannot practically be made, it shall order separate trials of the defendants. Upon failure of the prosecuting attorney to so move before trial, the court may refuse to admit such statement, confession or admission into evidence at trial, or take such other action as the interest of justice requires.

> (b) Motion by Defendant and State. If for any other reason it appears that a defendant or the State is prejudiced by a permissible or mandatory joinder of offenses or of defendants in an indictment or accusation the court may order an election or separate trials of counts, grant a severance of defendants, or direct other appropriate relief.

*Bruton v. United States, supra,* decided some three years after *Young,* reached the same result in a federal criminal trial. *Bruton* involved a joint trial of Bruton and one Evans on a charge of armed postal robbery. At trial, the government

introduced into evidence an oral confession made by Evans to a postal inspector. The confession also implicated Bruton. Evans did not testify. The trial court instructed the jury that the confession could be used only against Evans, that it was inadmissible hearsay insofar as Bruton was concerned and was to be disregarded in considering his innocence or guilt. Both defendants were convicted.

On Bruton's appeal, the United States Supreme Court held that the admission into evidence of Evans' confession, which also inculpated Bruton, added substantial weight to the government's case against Bruton in a form not subject to cross-examination. This was found to be a violation of Bruton's Sixth Amendment right of confrontation since Evans did not take the stand. 391 *U.S.* at 127–128, 88 *S.Ct.* at 1623, 20 *L.Ed.*2d at 480. The court held that this encroachment on Bruton's constitutional rights could not be avoided by an instruction to the jury to disregard the Evans statement as inadmissible hearsay in determining Bruton's innocence or guilt. 391 *U.S.* at 137, 88 *S.Ct.* at 1628, 20 *L.Ed.*2d at 485–486. In this regard, *Bruton* expressly overruled the contrary holding in *Delli Paoli v. United States*, 352 *U.S.* 232, 77 *S.Ct.* 294, 1 *L.Ed.*2d 278 (1957). Since the Sixth Amendment had been made applicable to the states in *Pointer v. Texas*, 380 *U.S.* 400, 85 *S.Ct.* 1065, 13 *L.Ed.*2d 923 (1965), the *Bruton* holding binds state as well as federal courts.

Ever since *Bruton* was decided, trial courts have struggled to find ways to try defendants jointly even though one has made an out-of-court statement or confession which implicates a co-defendant. Their purpose has been to comply with the mandate of *Bruton* and at the same time achieve substantial savings of judicial time through joint trials.

Under *R.* 3:15–2, the trial court has at least three options in a *Bruton-Young* situation. If the State moves for a determination as to whether such portion of the statement, confession or admission involving a co-defendant can be effectively deleted

therefrom, the court can order that the deletions be made.[2] If effective deletions cannot practically be made, separate trials of the defendants shall be ordered. Should the State fail to so move, the court may refuse to admit the statement, confession or admission into evidence at trial. A few courts have utilized a fourth method which avoids separate trials and ostensibly saves the time of the court, counsel and witnesses. Under this method, the defendants are tried jointly but separate juries are impaneled to hear simultaneously the proofs admissible against all defendants. When evidence can be used against only one of the defendant under *Bruton*, it is presented to the appropriate jury and the other panel is withdrawn from the courtroom. The panels are physically separated throughout the case and throughout jury deliberations.

This technique was used in *State v. Hernandez*, 163 *N.J.Super.* 283 (App.Div.1978), certif. den. 81 *N.J.* 342 (1979), where three defendants were tried jointly and the *Bruton* problem avoided by impaneling three juries. As the Appellate Division states, the juries were instructed not to discuss the cases with each other. Separate openings and summations were made to each jury. Full direct and cross-examinations were had of all witnesses either before all three juries or an individual jury as the circumstances required. Separate jury instructions were given to each jury and separate verdicts were rendered. 163 *N.J.Super.* at 286.

The Appellate Division in *Hernandez* noted that the procedure used was "unusual." After reviewing the record, however, it was satisfied that Hernandez had received a fair trial, that his guilt had been fully established and no prejudice resulted to him. *Id.* at 286–287. Nevertheless, the Appellate Division did not place its *imprimatur* on this method of trying multiple defendants since it created too many opportunities for error to take place which could require a reversal and retrial. *Id.* at 287.

---

[2]*Bruton* refers to criticisms suggesting that deletions from confessions are ineffective. 391 *U.S.* at 134 n. 10, 88 *S.Ct.* at 1626, 20 *L.Ed.2d* at 484.

Other jurisdictions have given limited approval to the use of this procedure. *United States v. Rimar*, 558 *F.*2d 1271 (6 Cir. 1977), *cert.* den. 434 *U.S.* 984, 98 *S.Ct.* 609, 54 *L.Ed.*2d 478, 435 *U.S.* 922, 98 *S.Ct.* 1484, 55 *L.Ed.*2d 515 (1978); *United States v. Sidman*, 470 *F.*2d 1158 (9 Cir. 1972), *cert.* den. 409 *U.S.* 1127, 93 *S.Ct.* 948, 35 *L.Ed.*2d 260 (1973); *People v. Brooks*, 92 Mich.App. 393, 285 *N.W.*2d 307 (1979). See Note, "Criminal Law—Multiple Jury Joint Trials—On the Joint Trial of Two Defendants, the Empanelling of Two Juries Simultaneously is Permissible," 2 *Fordham Urban L.J.* 407 (1974). Even in these cases, though, concern is expressed over the problems involved. The reason for the lack of widespread adoption of this technique would appear to be the belief that application of appropriate safeguards necessary to protect the rights of defendants in such a trial would be more time consuming than if separate trials were ordered. In addition, inherent in such a complicated procedure is the greatly enhanced possibility of error. It seems clear, therefore, that such procedure remains the rare exception rather than the rule.

We conclude that the multiple jury procedure utilized in the instant case can involve substantial risks of prejudice to a defendant's right to a fair trial. As the Appellate Division noted in *Hernandez*, there are too many opportunities for reversible error to take place. We do not recommend it. If it is to be used at all, it should be in relatively uncomplicated situations which will not require the excessive moving of juries in and out of the courtroom and where physical separation of the juries during the entire trial proceedings can be insured. In short, a trial court should carefully weigh the risks involved before attempting to utilize the multiple jury procedure.

In the instant case Belverio is the only defendant whom the *Bruton* rule protected and he was the one who originally moved in the alternative for a two-jury trial. Neither defendant can point to any specific prejudice or error. The claims asserted are general in nature, such as that the two-jury procedure caused confusion and speculation in the minds of the jurors. It is also

suggested that the separation of the juries may not have been watertight. We are satisfied from a careful review of the record that no reversible error occurred and, notwithstanding the comments heretofore made as to the procedure employed, the judgments of conviction are hereby affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal*—none.