832 P.2d 219

**Michael HEDLUND and James Erin McKinney, Petitioners,**

**v.**

**SUPERIOR COURT of The State of Arizona, in and for the COUNTY OF MARICOPA, the Honorable Steven D. Sheldon, a judge thereof, Respondent Judge,**

**Richard ROMLEY, Maricopa County Attorney, Real Party in Interest.**

No. 1 CA–SA 92–082.

Court of Appeals of Arizona, Division 1, Department C.

April 27, 1992.

Review Granted July 7, 1992.

Peter A. Leander, Phoenix, for petitioner Hedlund.

Scott F. Allen, Mesa, for petitioner McKinney.

Richard M. Romley, Maricopa County Atty. by Louis F. Stalzer, Deputy County Atty., Phoenix, for real party in interest.

## OPINION

CONTRERAS, Presiding Judge.

This special action came on regularly for oral argument on April 21, 1992, before Presiding Judge Joe W. Contreras with Judges Ruth V. McGregor and Noel Fidel participating. The matter was taken under advisement and it was determined that an opinion should issue without delay.

After consideration, a majority of the court has concluded that the respondent judge erred in ordering that dual juries be empaneled in this first degree murder case in which the state has requested the imposition of the death penalty. In *State v. Lambright,* 138 Ariz. 63, 673 P.2d 1 (1983), the Arizona Supreme Court clearly prohibited the use of dual juries[1] in the

---

1. As stated in *Lambright,* this concept contemplates "a single 'dual jury' trial in which two

absence of approved guidelines. In doing so, the court specifically stated that dual juries should not be used in death penalty cases:

> [B]ecause this procedure is unauthorized by our rules, trial courts must obtain the approval of the Supreme Court before conducting further trials in this manner. If proposed guidelines are presented for approval, we will then consider whether they successfully minimize the risks of this procedure while maintaining the benefit of conserving judicial resources.

We note that although courts have utilized the dual jury procedure in other murder cases, including one in which the death penalty was given and affirmed, *we feel that death penalty cases are inappropriate vehicles for experimentation with new procedures, and the practice should be avoided in the future.*

*Id.* at 70, 673 P.2d at 8 (emphasis added).

■ In the present special action, the respondent judge based his ruling that dual juries be empaneled upon article 2, section 2.1 of the Arizona Constitution (the Victims' Bill of Rights). However, we note that this section does not provide crime victims with any substantive right to have dual juries empaneled. While it does afford victims the right to a speedy trial or disposition, it does not make any reference to the procedures by which this right is to be enforced.

■ Article 6, section 5 of the Arizona Constitution gives the Arizona Supreme Court the exclusive power to establish rules governing procedural matters in Arizona courts. *Lambright,* 138 Ariz. at 69, 673 P.2d at 7. A superior court may not supplement or supersede this rule-making power. *Id.* In *Lambright,* the supreme court found that the Arizona Rules of Criminal Procedure did not authorize the dual jury procedure. *Id.* The court has not promulgated any rules authorizing the procedure in the interim. Rule 39, which

deals with victims' rights, does not include any reference to dual juries.

■ We agree with many of the observations made in the dissent. We should encourage innovative efforts by the trial courts. We also note that the supreme court did indicate in *In the Matter of the Rights to the Use of the Gila River, Salt River Project/Salt River Valley Water Users' Ass'n,* 171 Ariz. 230, 830 P.2d 442 (1992), that it might reexamine its *Lambright* decision in criminal cases. However, we further note that the supreme court has not done so and we cannot assume that the court will permit experimentation with dual juries, particularly in cases in which the death penalty is sought for each defendant. Supreme court decisions remain binding until the court itself decides to disaffirm them. *State v. Eichorn,* 143 Ariz. 609, 694 P.2d 1223 (App.1984). This court cannot ignore a supreme court decision and may not permit the superior court to do so. *See State v. Davis,* 108 Ariz. 75, 492 P.2d 1182 (1972) (superior court may not review or overrule supreme court decision).

■ As the respondent judge observed, Justice Feldman specially concurred in *Lambright* and stated that he would not have required the trial court to obtain the supreme court's approval before utilizing the dual jury procedure. The majority opinion in *Lambright* is still the law, however, and it has not become less binding because the authoring judge and the judges who concurred in the decision are no longer members of the court. Changes in court personnel do not affect the validity of a court's prior ruling. 21 C.J.S. *Courts* § 144 (1990).

We conclude that the dual jury issue is a purely legal question of statewide importance which *Lambright* controls and that the petitioners have no plain, speedy, or adequate remedy by appeal from the trial court's order. Accordingly, a majority of the court in the exercise of its discretion,

---

separate juries [are] empaneled, each to decide the guilt or innocence of only one defendant, and each permitted to hear only evidence admissible against that one defendant." 138 Ariz.

at 67, 673 P.2d at 5. However, the concept also contemplates that the two juries would simultaneously hear evidence which was relevant to and admissible against both defendants.

accepts jurisdiction of that portion of the petitioners' special action that seeks relief from the trial court's order that dual juries be empaneled. The majority of the court has determined that it is appropriate to grant relief and vacates the trial court's March 18, 1992, order that dual juries be empaneled and remands this matter to the trial court for such further proceedings as may be appropriate. The court also vacates our prior order staying all proceedings in this matter.

McGREGOR, J., concurs.

FIDEL, Judge, dissenting:

In a detailed and thoughtful order, the trial judge explained why the severed trials in this case can best be handled in a simultaneous presentation before dual juries. He wrote in part:

> Two trials in this case would cause needless duplication. Witnesses would lose time from employment and suffer the inconvenience, tension and strain caused by having to repeat their testimony at separate trials. In addition, the victim's families would be put through the emotional turmoil of attending or enduring separate but almost identical presentations of evidence relating to the violent deaths of family members. Except for certain statements admissible against each defendant separately, the State's entire case is essentially the same as to both defendants. Counsel for the State has avowed that the testimony relating separately to each defendant would take less than an afternoon to present.

The trial judge also displayed a proper solicitude for the rights of the two defendants, setting forth detailed procedural requirements for the unfolding of the trial.

The majority concludes that the trial judge abused his discretion. I conclude that he *used* his discretion—particularly those underused elements, flexibility, adaptability, and innovation. Although the *Lambright* case presents a barrier, I do not think it as solid a barrier as the majority finds it to be.

First, as the trial judge observed, *Lambright* was written before the enactment of the Victims' Bill of Rights, Ariz. Const. art. 2, § 2.1. Although the majority correctly states that the Victims' Bill of Rights does not create a substantive victims' right to the use of dual juries in cases such as this, the trial judge did not suggest otherwise. His point was rather that the Victims' Bill of Rights requires the judiciary to rethink and adapt conventional methods to better accommodate the enumerated victims' right "[t]o a speedy trial or disposition." Ariz. Const. art. 2, § 2.1(10). The victims' families neither have nor assert the right to a dual jury proceeding in this case. The trial court's order, however, is intended in part to relieve them of the delay and trauma of a second, duplicative trial, and thereby serves a now-constitutionalized objective that was not considered when *Lambright* became law.

Second, our supreme court has very recently cast the vitality of *Lambright* into doubt. *See In the Matter of the Rights to the Use of the Gila River, Salt River Project/Salt River Valley Water Users' Association*, 171 Ariz. 230, 830 P.2d 442 (1992). There, the court affirmed a trial court's adoption of special rules and procedures to govern a complex civil case, observing that nothing in *Lambright* precluded such managerial innovation in civil cases. *Id.* Had the court gone no further, *Gila River* would have no bearing on this case; but in a footnote, the court invited reappraisal of *Lambright* in criminal cases as well. The court said of *Lambright's* characterization of dual jury usage in criminal cases as an unauthorized local rule:

> We are assuming, *arguendo*, that this conclusion in *Lambright* has continued vitality given new techniques in case management.... We have not been asked in this case to reexamine the relevant portion of *Lambright*.

*Id.* at 243 n. 26, 830 P.2d at 455 n. 26 (citations omitted). Such reexamination would be timely in this case.

Third, there is an ambiguity to *Lambright* that frustrates trial court manage-

ment of cases such as this. The *Lambright* majority wrote that "trial courts must obtain the approval of the Supreme Court before conducting further trials in this manner." 138 Ariz. at 70, 673 P.2d at 8. Yet as Chief Justice Feldman observed in special concurrence:

> [N]o procedure exists whereby a trial judge can obtain the opinion of this court, in advance, before using some technique which, although not prohibited, is not expressly permitted by rule.

*Id.* at 78, 673 P.2d at 16, Feldman, J., concurring.

The entire body of a court may, of course, petition the supreme court to approve a local rule. That process, however, although satisfactory for courtwide change, does not satisfy the individual trial judge's need for flexibility to meet the exigencies of a given case. Moreover, many of our rules have evolved from practices first attempted by innovative trial judges; to insist on formal rule making before experimentation denies the bench, the bar, and the public the opportunity to have rules pretested and developed in use.

Here the trial judge, recognizing that time has eroded *Lambright,* chose his only means to test that case and simultaneously seek appellate approval for a dual jury in this case: He painstakingly detailed the dual jury procedures that he intends to use and left it to the parties through special action to seek review of his decision.

Our adversary system is not so fair and efficient that we can afford to stifle innovative efforts by the trial courts. I would decline to accept jurisdiction and leave the supreme court the option upon further petition to provide discretionary review.