840 P.2d 1008

Michael HEDLUND and James Erin
McKinney, Petitioners,

v.

Honorable Steven D. SHELDON, Superi-
or Court of the State of Arizona, in and
for the County of Maricopa, a judge
thereof, Respondent Judge.

Richard ROMLEY, Maricopa County
Attorney, Real Party in Interest.

No. CV–92–0224–PR.

Supreme Court of Arizona,
En Banc.

Oct. 8, 1992.

Reconsideration Denied Dec. 1, 1992.

Peter Leander, Phoenix, for petitioner
Hedlund.

Scott F. Allen, Mesa, for petitioner
McKinney.

Richard M. Romley, Maricopa County
Atty. by Gerald R. Grant, Phoenix, for
State of Ariz.

## OPINION

FELDMAN, Chief Justice.

We accepted jurisdiction over this special
action[1] to determine whether the trial
judge abused his discretion when he decid-
ed to employ "dual juries" in a criminal
trial. *See* Rule 3, Ariz.R.P.Spec.Act., 17B
A.R.S. We have jurisdiction pursuant to
Ariz. Const. art. 6, § 5(3) and Rule 8(b),
Ariz.R.P.Spec.Act.

---

1. In Arizona, relief formerly obtained by writs
of prohibition, mandamus or certiorari is now
obtained by "special action." Rule 1, Ariz.
R.P.Spec.Act., 17B A.R.S.

FACTS AND PROCEDURAL HISTORY

In April 1991, Michael Hedlund and James Erin McKinney (Defendants) were indicted as codefendants on two counts of first degree murder, two counts of burglary, and one count of theft. The Maricopa County Attorney subsequently filed a notice that he would seek the death penalty against each Defendant if convicted.

Before trial, the trial judge severed the cases because the prosecution intended to offer in evidence inculpatory statements made by each codefendant that would be inadmissible against the other. *See Bruton v. United States*, 391 U.S. 123, 136–37, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968). However, because virtually all of the other evidence appeared to be admissible against both Defendants, the trial judge ordered that dual juries would be impaneled to hear the case. Under the judge's order, two juries would be selected from separate panels, each to hear the case against one of the Defendants. For all but the reading of charges, opening statements, closing arguments, and approximately one afternoon's testimony, both juries would be present in the courtroom; however, only the jury hearing a particular Defendant's case would be in the courtroom to hear the charges against that Defendant, his opening statement, closing argument, and testimony related to his inculpatory statements. Minute Entry, March 18, 1992, at 6–8.[2]

Defendants challenged the judge's order by bringing a special action in the court of appeals, which accepted jurisdiction. With one judge dissenting, the court granted Defendants relief, ruling that the trial judge erred in ordering that dual juries be impaneled. *Hedlund v. Superior Court*, 171 Ariz. 566, 567–68, 832 P.2d 219, 220–21 (Ct.App.1992). The decision was based on our holding in *State v. Lambright*, 138 Ariz. 63, 673 P.2d 1 (1983), *cert. denied*, 469 U.S. 892, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984). *Hedlund*, 171 Ariz. at 566–68, 832 P.2d at 219–21. The dissenting judge concluded that the trial judge had properly

*"used* his discretion—particularly those underused elements, flexibility, adaptability, and innovation. Although the *Lambright* case presents a barrier, I do not think it as solid a barrier as the majority finds it to be." *Id.* at 568, 832 P.2d at 221 (Fidel, J., dissenting).

The state petitioned this court to review the court of appeals' opinion. Treating the petition for review as a petition for special action, we accepted jurisdiction. We entered an order vacating the court of appeals' opinion and affirming the trial judge's order to impanel dual juries, with our opinion to follow. This is that opinion.

DISCUSSION

■ The issue in this case requires us to reevaluate our holding in *Lambright*, and we believe a preliminary explanation of why we have chosen to revisit *Lambright* is warranted. In matters relating to the interpretation and application of court rules and procedures, this court must pay constant attention to developments in court procedures and changing circumstances in order to fulfill our constitutional role. *See* Ariz. Const. art. 6, § 5. In furtherance of this responsibility, we will reevaluate prior decisions regarding court procedures, where principles of stare decisis might counsel otherwise in substantive matters involving common law decision-making or statutory or constitutional interpretation. *See, e.g., State v. Mendoza*, 170 Ariz. 184, 823 P.2d 51 (1992) (overruling the interpretation of Rule 8.2(a), Ariz.R.Crim.P., 17 A.R.S., established for DUI cases in *Hinson v. Coulter*, 150 Ariz. 306, 723 P.2d 655 (1986)). Our recent decisions and rules have been informed by a recognition that the judicial process benefits from according flexibility and discretion to judges in their efforts to manage a large and complex caseload. *See In re the Rights to the Use of the Gila River*, 171 Ariz. 230, 233 n. 26, 830 P.2d 442, 455 n. 26 (1992) (citing Rule 16(c)(10), (17), Ariz.R.Civ.P., 16 A.R.S. (amended effective July 1, 1992)); *see also*

---

**2.** The portion of the trial judge's order concerning dual jury procedures is included as the appendix to this opinion.

Rules 26(b)(4), 30(a), 33.1(c), 36(b), Ariz. R.Civ.P. (amended effective July 1, 1992) (enhancing trial judge's discretion over scope of discovery and admission of cumulative evidence). In light of these circumstances, we believe it appropriate to reassess *Lambright.*

■ In *Lambright,* as in the present case, two codefendants were charged with first degree murder and several other offenses. *Lambright,* 138 Ariz. at 67, 673 P.2d at 5. The trial judge severed the two cases, but tried them together using dual juries. *Id.* The defendants were both convicted, and argued on appeal that the trial judge erred in employing dual juries. *Id.* In rejecting the defendants' claim of error, we first acknowledged that several other state and federal courts had approved the dual jury procedure because, in general, it respects the defendants' constitutional rights while serving the end of judicial economy. *Id.* at 68, 673 P.2d at 6.[3] We also noted that other courts had "discouraged or disapproved of future use of the procedure, finding the risks of error inherent in the procedure too great." *Id.* at 69, 673 P.2d at 7.[4] We held that the use of the

procedure was not inherently prejudicial and was not "reversible error in the instant case." *Id.* at 70, 673 P.2d at 8. Nevertheless, we rejected the trial judge's use of the dual jury, not because of potential constitutional infirmity but because we concluded that the trial judge had exceeded the scope of his authority in adopting the dual jury procedure. *Id.* at 69, 673 P.2d at 7.

Specifically, we held that the trial judge's use of dual juries was improper as a local rule "unauthorized by this court." *Id.* We reasoned that Rule 13.4, Ariz.R.Crim.P., 17 A.R.S. (governing severance) (hereinafter Rule ——), did not explicitly authorize such a procedure, and that Arizona's rules lacked "a provision analogous to Rule 57 of the Federal Rules of Criminal Procedure, which grants broad power to 'proceed in any manner not inconsistent with these rules.'" *Lambright,* 138 Ariz. at 69, 673 P.2d at 7. The relevant rule in Arizona is Rule 36, which provides that "[a]ny court may make and amend rules governing its practice not inconsistent with these rules. No such rule shall become effective until approved in writing by the Supreme Court."

**3.** *Lambright* cited the following decisions approving the use of dual juries: *United States v. Hayes,* 676 F.2d 1359, 1366–67 (11th Cir.), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 455, 74 L.Ed.2d 608 (1982); *United States v. Rimar,* 558 F.2d 1271, 1273 (6th Cir.), *cert. denied,* 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978); *United States v. Rowan,* 518 F.2d 685, 689–90 (6th Cir.), *cert. denied,* 423 U.S. 949, 96 S.Ct. 368, 46 L.Ed.2d 284 (1975); *People v. Wardlow,* 118 Cal.App.3d 375, 173 Cal.Rptr. 500, 502–05 (1981); *People v. Brooks,* 92 Mich.App. 393, 285 N.W.2d 307, 308–09 (1979). *Lambright* also cited these decisions giving limited approval to the dual jury procedure: *United States v. Sidman,* 470 F.2d 1158, 1170 (9th Cir.1972), *cert. denied,* 409 U.S. 1127, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973); *State v. Watson,* 397 So.2d 1337, 1342 (La.), *cert. denied,* 454 U.S. 903, 102 S.Ct. 410, 70 L.Ed.2d 222 (1981).

After *Lambright* was decided, several other courts upheld the use of the dual jury procedure. *See United States v. Lebron–Gonzalez,* 816 F.2d 823, 830–31 (1st Cir.), *cert. denied,* 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987); *Smith v. DeRobertis,* 758 F.2d 1151, 1151–52 (7th Cir.), *cert. denied,* 474 U.S. 838, 106 S.Ct. 118, 88 L.Ed.2d 96 (1985); *United States v. Lewis,* 716 F.2d 16, 18–20 (D.C.Cir.), *cert. denied,* 464 U.S.

996, 104 S.Ct. 492, 78 L.Ed.2d 686 (1983); *People v. Harris,* 47 Cal.3d 1047, 255 Cal.Rptr. 352, 366–70, 767 P.2d 619, 633–37 (1989); *State v. Beam,* 109 Idaho 616, 710 P.2d 526, 533–34 (1985), *cert. denied,* 476 U.S. 1153, 106 S.Ct. 2260, 90 L.Ed.2d 704 (1986); *State v. Bowman,* 588 A.2d 728, 732–34 (Me.1991); *People v. Ricardo B.,* 73 N.Y.2d 228, 538 N.Y.S.2d 796, 797–99, 535 N.E.2d 1336, 1337–39 (1989). *See generally* David Carl Minneman, Annotation, *Propriety of Use of Multiple Juries at Joint Trial of Multiple Defendants in State Criminal Prosecution,* 41 A.L.R.4th 1189 (1985 & Supp.1991); Annotation, *Propriety of Use of Multiple Juries at Joint Trial of Multiple Defendants in Federal Criminal Case,* 72 A.L.R.Fed. 875 (1985 & Supp.1991).

**4.** The appellate decisions cited in *Lambright* were *People v. Williams,* No. 51870 (Ill. filed Apr. 16, 1982), *rev'd on other grounds,* 93 Ill.2d 309, 67 Ill.Dec. 97, 444 N.E.2d 136 (1982), *cert. denied,* 467 U.S. 1218, 104 S.Ct. 2666, 81 L.Ed.2d 371 (1984); *Scarborough v. State,* 50 Md.App. 276, 437 A.2d 672, 674–76 (1981); *State v. Corsi,* 86 N.J. 172, 430 A.2d 210, 211–13 (1981). Even these decisions, however, stopped short of finding that dual jury procedures were inherently prejudicial, and found no reversible error. *Scarborough,* 437 A.2d at 676; *Corsi,* 430 A.2d at 213.

We considered Rule 36 in *Hare v. Superior Court*, a case addressing guidelines adopted by the Pima County Superior Court as part of its 1982 automated calendaring project. 133 Ariz. 540, 541, 652 P.2d 1387, 1388 (1982). One such guideline provided that "after the first trial date, no plea agreements would be accepted by the court except those which result in pleas to the charges contained in the indictment." *Id.* Recognizing that Rule 36 "allows adoption of local rules of practice and procedure, but only with our approval," we held that the guidelines "were adopted by the Pima County Superior Court in excess of its jurisdiction" because they were "not proposed as part of the local rules of the Pima County Superior Court and were not submitted for approval to this court." *Id.* at 542, 652 P.2d at 1389. We explained that

> [a] rule of court prescribes a procedural course of conduct that litigants are required to follow, the failure to comply with which may deprive the parties of substantial rights. These "guidelines" prescribe a course of conduct for certain aspects of the criminal practice in Pima County Superior Court. *They are, in effect, local rules of criminal procedure.*

*Id.* (emphasis added). We added, however, that

> [n]othing we say here should discourage courts, through the adoption of local rules, to carry out experiments which may improve the judicial process. Indeed, these efforts should be encouraged. But local rules must first be approved by this court before they are effective.

*Id.* at 543, 652 P.2d at 1390.

*Lambright* took the decision in *Hare* a significant step further. Whereas *Hare* involved a rule that was both adopted by the Pima County Superior Court as a whole and generally applied to all criminal cases being tried in that court, *Lambright* held that a procedure adopted by a *single* trial judge for a *single* trial was a local rule and, therefore, unauthorized and impermissible.

Upon reexamination, we believe that *Lambright* went too far. The decision to impanel a dual jury is not a local rule. It is not a rule of procedure at all. Rather, it is simply "the exercise of an individual judge's discretion to use a particular technique in order to meet a specific problem" in a single case. *Lambright*, 138 Ariz. at 78, 673 P.2d at 16 (Feldman, J., specially concurring). As long as such procedures are not inconsistent with applicable constitutional and statutory provisions, as well as our rules of court, "[t]rial judges have inherent power and discretion to adopt special, individualized procedures designed to promote the ends of justice in each case that comes before them." *Id.* The holding to the contrary in *Lambright* is therefore overruled.

■ Of course, when considering innovative techniques, trial judges should be sensitive to the special problems capital cases sometimes present. They will want to weigh the advantages of such techniques against the complexity and delay associated with direct and collateral review of capital cases. In balancing these concerns, trial courts are likely to find that some innovative techniques may be quite suitable for capital cases while others may not. In short, that a case is capital is one of the many factors a court will want to consider in deciding whether to employ innovative techniques.

## DISPOSITION

The trial judge's decision to impanel a dual jury was not a local rule, and thus the judge's implementing order did not exceed his authority under the Arizona Rules of Criminal Procedure. That portion of our opinion in *State v. Lambright* holding to the contrary is overruled. The court of appeals' opinion is vacated. The trial court's order is affirmed.

MOELLER, V.C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.

## APPENDIX

*Trial Procedure:*

A) A separate voir dire of each panel will be conducted with all parties present. Dur-

ing jury selection, the selecting defendant and his attorney will be seated at counsel table. The other defendant and his attorney will be present for the brief period of time in which it will be necessary to introduce them to the jury and determine if any prospective jurors know them. The courtroom will be arranged to provide each juror with a view of the witnesses and the defendants. The defendants and their attorneys will be given full view of the witnesses, the jurors and the prosecutor. The attorneys will be given rules that will govern their conduct during the trial, but will be at liberty to suggest changes of procedure during the trial and can be assured that flexibility will be maintained throughout the trial.

There will be an explanation to each panel: 1) as to whose guilt or innocence they will decide; 2) that each jury will hear testimony about the other defendant; 3) that both defendants will be present in the courtroom throughout the trial; 4) there will be some evidence presented to only one jury and that using two juries will be a great time saver so that the trials will not have to be duplicated; 5) that the juries will switch places every other day; 6) regarding the need for separateness of the juries; 7) that the dual-jury procedure in this case would be logistically more efficient, but determine whether the procedure would affect any juror's deliberation or ability to concentrate on the case; 8) the juries will be advised to consider all of the evidence they hear while in the courtroom and to consider all exhibits received in evidence, regardless of which attorney elicits the testimony or offers the exhibits; 9) they will be admonished not to speculate on the nature of the evidence being offered in the courtroom while they are outside and will also be asked during the initial voir dire to assure the Court, after being advised of the various ways to conduct trials, that in this case the fact two juries will be utilized will not interfere with their ability to sit as jurors or cause them to speculate as to the reason why two juries are necessary; 10) the jurors will be directed not to draw any inference from the fact both defendants are seated at the same counsel table; 11) members of each jury will wear identifying labels on their juror buttons to identify them.

B) There will be two opening statements, one to each jury, separately.

C) The charges will be read separately.

D) Preliminary and closing instructions may be given to both juries simultaneously, if otherwise appropriate.

E) Lawyers will examine all witnesses from a podium.

F) During the trial, the lawyers will not be permitted to touch the exhibits:

1) at the time that an exhibit is referred to, with a request that a witness view it, the bailiff will take the exhibit to the witness after the lawyer calls its number.

2) All exhibits will be marked before trial.

3) Duplicate exhibits, where feasible; note which jury gets the exhibit and have lawyers sign off before delivery of those exhibits (or there [sic] duplicate) to the juries at the close of the trials. Those exhibits that cannot be duplicated will be transmitted between juries and signed-off for on each transfer. One hour will be provided for review of shared exhibits before they are transmitted to the other jury for their initial review. Thereafter, the exhibits will be exchanged as needed and signed off on delivery.

G) The normal procedure of any joint trial will be followed until witnesses are called to testify as to statements made by the speaking defendant. Direct testimony of each witness, which is admissible against both defendants, will be first elicited on direct by the prosecutor. After direct, the attorney for each defendant will be permitted to cross-examine. When a declarant's statement will be introduced, that defendant's jury alone will be returned to the courtroom where it will hear the direct and cross-examination of the witness relating to the statement. The non-speaking defendant and his attorney will remain in the spectators section of the courtroom if they choose to do so. When the examination of the witness is complete, the jury

will be removed. Both juries will then be returned to the courtroom together if there is remaining testimony to be heard that day.

H) At the return of the first verdict: 1) bailiff will pick it up and deliver it to the Court; 2) the verdict will be read silently by the clerk who will record the verdict; and 3) the attorney's [sic] will then be called to the bench and view the verdict; 4) the bailiff will then give the verdict forms to the panel and, as each juror thereafter reviews the verdict forms, each will be asked by the clerk if that is his/her verdict; 5) verdicts will be sealed by the clerk after polling; 6) jurors will be excused, but advised that admonition is still in effect and that they should not disclose their verdict or discuss the case with anyone; 7) obtain jurors phone numbers for contact to advise at the time the other verdict is returned that the admonition no longer applies; 8) at the return of the second verdict:

a) the normal procedure for receiving verdicts in the courtroom would be followed; b) following that, the clerk would then read the first verdict which had previously been returned.