871 P.2d 740

**Joe David CAMPBELL, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable Michael J. O'Melia, a judge thereof, Respondent Judge,**

**STATE of Arizona, Real Party in Interest.**

No. 1 CA–SA 93–0280.

Court of Appeals of Arizona, Division 1, Department E.

Feb. 22, 1994.

As Corrected March 10, 1994.

Review Granted May 3, 1994.

Richard M. Romley, Maricopa County Atty. by Arthur Hazelton, Deputy County Atty., Phoenix, for real party in interest.

Dean W. Trebesch, Maricopa County Public Defender by Lawrence S. Matthew, Deputy Public Defender, Phoenix, for petitioner.

## OPINION

VOSS, Presiding Judge.

In this special action, petitioner Joe David Campbell (Campbell) asks this court to reverse the trial court's denial of a sua sponte request by Campbell's attorney for additional time to allow Campbell to file a pro se petition for post-conviction relief. The facts here are virtually identical to those of *Montgomery v. Superior Court*, 178 Ariz. 84, 870 P.2d 1180 (App.1993), in which another department of this court held that defendants in Campbell's position are entitled to such extensions. Because we disagree with *Montgomery* we decline its application. *State v. Dungan*, 149 Ariz. 357, 718 P.2d 1010 (App. 1985); *Castillo v. Indus. Comm.*, 21 Ariz. App. 465, 520 P.2d 1142 (1974) (Previous decisions of this court are considered highly persuasive and binding, unless we are convinced that the prior decision is based on clearly erroneous principles.).

For the reasons expressed below, we accept jurisdiction and deny relief.

## FACTS AND PROCEDURAL HISTORY

Campbell pled guilty to criminal damage—thereby waiving his right to appeal, Ariz.Rev. Stat.Ann. (A.R.S.) section 13–4033(B) (Supp. 1993)—and was sentenced to 4.5 years in prison. Campbell filed a notice of post-conviction relief, pursuant to Arizona Rules of Criminal Procedure (Rule) 32, and requested the assistance of counsel. Counsel was assigned on July 13, 1993. On October 15, 1993, Campbell's counsel filed a notice with the trial court stating that he had completed his review of the record and had found no meritorious claims to present. In that notice, counsel requested that the trial court grant Campbell thirty more days to file a petition pro se, should he so desire. The trial court denied this request. Campbell then petitioned this court for special action relief. The court has jurisdiction over this matter under article 6, section 9 of the Arizona Constitution and under the Rules of Procedure for Special Action.

## ISSUE

The issue presented is whether Campbell—who waived his right to appeal, and who, after giving notice of post-conviction relief, asked for and was assigned counsel—is entitled to an extension of the Rule 32 filing deadline to permit submission of a pro se petition when his appointed counsel was unable to urge any meritorious claims.

## DISCUSSION

As stated, this court has addressed this issue in *Montgomery*. Thus, we must either follow *Montgomery*, distinguish it, or challenge it. Because the facts of this case are indistinguishable in any material way from those in *Montgomery*, the second option is unavailable. This leaves only following *Montgomery* or departing from it. We reach a result contrary to *Montgomery* and therefore direct our opinion primarily at what we perceive to be its flaws.

We disagree with the holding in *Montgomery* because it authorizes hybrid representation at the trial level without any constitutional basis and because it constitutes judicial rule making by the court of appeals.

In *Montgomery*, the court held that a petitioner whose Rule 32 counsel is unable to

find any meritorious claims is "entitled to present his claims *pro se....*" 178 Ariz. at 87, 870 P.2d at 1183. The court reasoned that a supplemental pro se filing was necessary to protect a defendant's constitutional and procedural right of access to the appellate court and permissible because it did not violate the rule against hybrid representation. 178 Ariz. at 86–87, 870 P.2d at 1182–83. The court justified its actions as only "preserv[ing] the same access to the courts offered to a petitioner under the former version of Rule 32 ... and ... *Anders* procedure...." 178 Ariz. at 87, 870 P.2d at 1183. We find none of these reasons convincing.

*Hybrid Representation*

We have held that article 2, section 24 of our state constitution "was intended to give an accused the right to represent himself *or* the right to be represented by counsel, but not the right to have his case presented ... both by himself and by counsel acting alternately or at the same time." *State v. Stone*, 122 Ariz. 304, 307, 594 P.2d 558, 561 (App. 1979) (emphasis added). Clearly, an accused has no right to hybrid representation at trial under either the federal or our state constitution. *Id.* at 308, 594 P.2d at 562. Because Rule 32 proceedings are considered part of the original criminal action under Rule 32.3, we hold that a defendant has no right to hybrid representation during post-conviction relief proceedings. Campbell argues, however, (with support from *Montgomery*) that this was not hybrid representation, but rather a permissible advisory counsel situation. We disagree. While we recognize that defendants have the right to proceed pro se, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), they must invoke that right unequivocally. *State v. Rickman*, 148 Ariz. 499, 503, 715 P.2d 752, 756 (1986) (citing *State v. Hanson*, 138 Ariz. 296, 300, 674 P.2d 850, 854 (App.1983)).

Here, as in *Montgomery*, defendant made no request to proceed alone and in neither case did defense counsel withdraw from representation. Instead, after finding no meritorious claims to raise, defense counsel merely asked that their clients be allowed to file on their own. In our view, giving first the attorney and then his client the opportunity to file a petition clearly constitutes "acting alternately" to present a case in violation of *Stone*. We are unaware of any case—and *Montgomery* cites none—which allows appointed counsel to unilaterally convert his or her status from counsel of record to "advisory counsel" simply by giving notice to the trial court. Thus, *Montgomery* creates a unique form of co-representation that has never been sanctioned by any rule or statute and that is without precedent in the decisions of this court.

Indeed, until *Montgomery* we consistently maintained that a defendant is bound by the actions of his counsel. *State v. Alford*, 157 Ariz. 101, 754 P.2d 1376 (App.1988); *State v. Scrivner*, 132 Ariz. 52, 643 P.2d 1022 (App. 1982); *State v. Stanley*, 123 Ariz. 95, 597 P.2d 998 (App.1979).[1] In *Alford*, for example, we held that an appellate counsel's refusal to argue particular issues constituted a waiver that was binding on the defendant, despite the defendant's express desire to have those issues raised. 157 Ariz. at 102, 754 P.2d at 1377 (citing *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). And in *Stanley*, we found the defendant's complaint about his counsel's "determination of what issues [were] appealable" to be without merit because such determina-

---

1. The dissenter's attempt to distinguish these cases is unpersuasive. We see little difference between an attorney directly stating that his client has no meritorious claims and an attorney implying—by refusing to argue issues suggested by his client—that the client's claims are without merit. The only distinction is the degree to which the attorney views the client's position as unmeritorious.

Therefore, in our view, denying Alford and Stanley the chance to separately raise issues on their own strongly militates against permitting petitioners like Montgomery and Campbell to file separate petitions. It would be inconsistent to, on the one hand, uphold a policy of precluding defendants from arguing issues which their attorneys deemed meritless (even though the defendant vociferously promoted their inclusion), and at the same time grant defendants, who have neither expressed a desire to proceed pro se nor articulated any particular issues they wish to have raised, the right to file a supplemental pro se petition after their appointed counsel declare that no meritorious issues exist.

tions are "a matter of counsel's judgment." 123 Ariz. at 106, 597 P.2d at 1009. Similarly, the U.S. Supreme Court has held that a defendant is bound on appeal by the strategic decisions and actions of his lawyer and must "bear the risk of attorney error that results in a procedural default." *Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991).

In light of these cases we must ask: if a defendant's counsel's actions and decisions on a direct appeal can result in preclusion or default, why should such actions and decisions create a contrary result in a discretionary Rule 32 review? As we have stated previously, "[i]t would be strange to accept [the holdings of these cases] and yet conclude that the defendant is entitled to consideration in a Rule 32 petition, on the merits, of ... issues that could have been raised by appellate counsel but were not." *Alford,* 157 Ariz. at 103, 754 P.2d at 1378. Yet that is precisely what the court has done in *Montgomery.* We think it is clear that had the attorneys for Campbell or Montgomery chosen to only raise one or two issues in a Rule 32 petition, we would not have permitted the defendants to supplement such petitions. Why then should these defendants not be similarly bound when their counsel find *no* meritorious claims? The answer for the *Montgomery* court was that defendants in this position should be afforded the opportunity to proceed pro se because defendants in *Anders* reviews have the chance to supplement. Again, we disagree.

While it is true that a defendant may file a supplemental brief on direct appeal if his assigned counsel is unable to find meritorious issues, this permission is based on the defendant's right to appeal and predicated on counsel's request to withdraw. *See Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967). Neither of these factors exists here. Campbell's attorney never asked to withdraw, and Campbell—by pleading guilty and waiving his right to appeal—was entitled only to the limited post-conviction review provided by Rule 32.[2]

*Montgomery,* however, by analogy to *Anders,* would have us expand the limited post-conviction procedures available to defendants who plead guilty to include the procedure available on direct appeal. This homogenization of the procedural requirements for direct appeals and discretionary Rule 32 reviews, in our view, represents an improper attempt to reinstate appellate rights for defendants who have expressly waived them. This melding of procedures also ignores the supreme court's statement that the courts should not "*Ander*-ize" Rule 32 proceedings,[3] and the fact that "Rule 32 proceedings are not designed to afford ... an automatic delayed appeal." *Scrivner,* 132 Ariz. at 54, 643 P.2d at 1024. *Anders* and Rule 32 are and should remain separate and distinct.

The *Montgomery* court also justified its decision by commenting that "petitioner seeks to preserve the same access to the courts offered to a petitioner under the former version of Rule 32...." 178 Ariz. at 87, 870 P.2d at 1183. The supreme court, however, revised Rule 32 to make procedural alterations in the access provided to petitioners.[4] It seems to us odd that the supreme

---

2. While we agree with the dissent's contention that a Rule 32 petitioner has a right to access to the court, we do not agree that the supreme court's holding in *Wilson v. Ellis,* 176 Ariz. 121, 859 P.2d 744 (Oct. 5, 1993), creates a right to the type of dual access afforded to *Anders* appellants and described by *Montgomery.*

3. In *Wilson v. Ellis,* the court—in response to the dissent's comment that the decision would require an *Anders* review in all Rule 32 cases—stated: "we are not commanding, nor do we want ... *Anders*-type reviews in [petitions for post-conviction relief]." 176 Ariz. at 124, 859 P.2d at 747.

4. Under the prior Rule 32, a defendant was required to file a petition that included "every

ground known to him" for changing his judgment or sentence, with "evidence ... supporting the allegations [attached]." Rule 32.5(a) (1987) (Old Rule). This burden on petitioners under the prior rule was somewhat alleviated by the fact that they were allowed to file "at any time after entry of the judgment and sentence." Old Rule 32.4(a). After filing, defendants were assigned counsel who were given thirty days to amend their clients' original petitions. Old Rule 32.-5(b).

Under the current Rule 32, defendants face strict time limits for filing, but are only required to file a form notice of post-conviction relief. Rule 32.4. Counsel may then be appointed, if requested, and either counsel or defendant is

court should choose to implement a new rule if this court, by interpretation, can "preserve the same [result]" as that which existed under the old rule. To follow *Montgomery* would nullify changes made to Rule 32.

Thus, we do not agree with *Montgomery* that a trial judge abuses his discretion by denying a request by counsel for additional time to allow his client to file a pro se petition. If the supreme court wishes to amend Rule 32 to allow for or require such extensions, clearly it may do so. This court, however, exceeds its power when it attempts to alter the Rules by judicial decision.

### The Rule Making Power

This court has power neither to create a rule like the one developed in *Montgomery* nor to exact compliance with it from the trial courts. Only the Arizona Supreme Court "has the Power to make rules relative to all procedural matters in any court." *Anderson v. Pickrell*, 115 Ariz. 589, 590, 566 P.2d 1335, 1336 (1977) (internal quotation marks omitted). "This power may not be *supplemented, annulled or superseded* by an inferior court...." *Id.* (emphasis added). Because of this, we have eschewed the type of rule making found in *Montgomery*, especially where the supreme court "has not promulgated any rules authorizing the procedure [in question]" and where the rule cited "does not include any reference to [the procedure invoked]." *Hedlund v. Superior Court*, 171 Ariz. 566, 567, 832 P.2d 219, 220 (App.1992), *vacated, Hedlund v. Sheldon*, 173 Ariz. 143, 840 P.2d 1008 (1992) (overruling the holding upon which our opinion was based).

Although Rule 32 does not explicitly forbid the type of hybrid representation endorsed by *Montgomery*, neither does it "include any reference" to this procedure. Under these circumstances we believe the better approach for this court is to leave any alteration or expansion to the supreme court rather than read anything into the rule.

Sound reasons support this approach. As our supreme court has noted:

given sixty days to file a fully complying petition. Rule 32.4–.5.

By holding that there is inherent power ... [to go beyond that which is] ... included within [the rules] the door is opened wide to *each judge* to adopt that practice which seems then most consistent with his own concept of what constitutes the due administration of justice. This completely nullifies the Rules of Criminal Procedure as a consistent system for practice. Such power has been repeatedly denied....

We think that the reasoning in *United States v. Peltz*, D.C., 18 F.R.D. 394, 406, 407, further points up why the courts of this state should not go beyond the scope of [the rules]:

\*      \*      \*      \*      \*      \*

"If the law ... is to be amended beyond the present provisions ... that reform should rest upon something more solid than semantic subtlety. The subject is important to prosecutors, defendants and the community at large....

"It is well to remember that we are dealing with a subject that is peculiarly within the Supreme Court's rule-making and rule-changing power. *Should the Supreme Court deem it appropriate to consider the question ... the Supreme Court has available the traditional method of [altering the rules].... [S]uch a technique of reform is superior to the case-to-case decisional approach, with its concomitant uncertainty and conflicts, individualizing facts, and inarticulated basic assumptions of policy.*"

*Polley v. Superior Court*, 81 Ariz. 127, 134–36, 302 P.2d 263, 268–69 (1956) (Struckmeyer, J., dissenting) citations omitted) (emphasis added) (quoted with approval by *Moore v. State*, 105 Ariz. 510, 514, 467 P.2d 904, 908 (1970)).

Furthermore, "[t]o attempt to promulgate ... rules . . hastily without the necessary study and deliberation to make them effective, might produce a less than satisfactory result." *State v. Blazak*, 105 Ariz. 216, 218, 462 P.2d 84, 86 (1969). In our view, *Mont-*

Clearly, these are significant changes to Rule 32 procedure.

*gomery* produced such a result by announcing a new rule that blurs the previous bright line concerning hybrid representation and calls into question the court's ability to rely on the actions of counsel as being those of the party represented. If the rule announced in *Montgomery* is a good idea (and it may well be) it should be pursued through the amendment process outlined in Supreme Court Rule 28.

Although we may circumvent this amendment procedure when faced with a conflict between a rule and the constitutional rights of defendants, *State v. Birmingham,* 95 Ariz. 310, 316, 390 P.2d 103, 107 (1964), *reh'g,* 96 Ariz. 109, 392 P.2d 775 (1964), we cannot simply rewrite a rule by decision. For example, in *Hart v. Superior Court* we had to choose between compliance with a recent U.S. Supreme Court ruling or adherence to the rules. We stated:

> We cannot change the rules [to] allow the type of notice suggested by *Boddie [v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)] as being adequate. We can only do the next best thing.
>
> Until the Arizona Supreme Court is afforded the opportunity to consider the problem before us and pass on the matter as it deems appropriate, we are obliged to afford the petitioner complete access to the legal relief required in conformity with the *Boddie* ruling.

16 Ariz.App. 184, 186, 492 P.2d 433, 435 (1971). Thus, we follow the rules unless applying an existing rule would violate higher constitutional principles. Under the facts of this case and *Montgomery,* however, no such constitutional conflict exists.

*Constitutional Right of Access*

In *Montgomery,* the court reasoned that giving defendants the right to proceed pro se was necessary to ensure "every litigant an 'adequate opportunity to present his claims fairly,'" *Montgomery,* 178 Ariz. at 87, 870 P.2d at 1183 (quoting *Ross v. Moffitt,* 417 U.S. 600, 616, 94 S.Ct. 2437, 2447, 41 L.Ed.2d 341 (1974)), and required because prisoners have a "right of access to the courts." *Id.* (citing *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974)). In *Ross,* however, the U.S. Supreme

Court held that a state's refusal to provide counsel to indigent defendants in discretionary appeals did not offend the Due Process or Equal Protection Clauses of the Constitution. 417 U.S. 600, 94 S.Ct. 2437. And in *Wolff,* the Court recognized that a prisoner's right of access is "subject to restrictions...." 418 U.S. at 556, 94 S.Ct. at 2974–75. *Ross* and *Wolff* hold that states are under no obligation to provide counsel for discretionary reviews or prison disciplinary proceedings, and that such proceedings do not merit the full panoply of procedural protections available on direct appeals. Yet *Montgomery* cites these cases as authority for the proposition that when a state voluntarily opts to provide counsel to indigents for discretionary post-conviction relief proceedings, failure to give such defendants the added opportunity to proceed pro se—after assigned counsel has found nothing to argue—amounts to inadequate access to the tribunal. We disagree with this proposition and do not believe *Ross* or *Wolff* supports it. Indeed, the holdings of *Ross* and *Wolff* actually militate against the invocation of procedures such as the one created by *Montgomery.*

Access to post-conviction relief and review procedures is not a constitutional right. *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *see also Scrivner,* 132 Ariz. at 54, 643 P.2d at 1024; *State v. Drozd,* 116 Ariz. 330, 569 P.2d 272 (App.1977). Thus, logic dictates that if no constitutional obligation exists to provide *any* access, access that comports with the rules governing such proceedings is per force adequate. Under Rule 32, this access is limited to the sixty-day period during which either the defendant *or* his assigned counsel is expected to file an adequate petition. Rule 32.4. Entitling defendants with a right to file pro se, after assigned counsel finds no meritorious claims, goes beyond both the requirements of due process and the scope of Rule 32.

*Montgomery* also cites article 2, section 24 of the Arizona Constitution to support its holding. We find no support in this source for *Montgomery*'s holding. Article 2, section 24 guarantees defendants the right to appeal, but when a defendant, as here and in *Mont-*

*gomery,* has entered a plea of guilty and the trial court has complied with the requirements of Rule 17.2, the defendant's right to appeal is waived and he is left with the more limited avenue of post-conviction relief. A.R.S. § 13–4033(B) (Supp.1993); *Wilson,* 176 Ariz. at 123–24, 859 P.2d at 746–47; *id.* at 124–25, 859 P.2d at 747–48 (Martone, J., dissenting).

Thus, Rule 32 defines the appellate access of a defendant who pleads guilty, insofar as those limits do not offend due process.[5] While the *Montgomery* court is correct in its assertion that Rule 32 was "designed to accommodate the unusual situation where justice ran its course and yet went awry," *Montgomery,* 178 Ariz. at 87, 870 P.2d at 1183 (quoting *State v. McFord,* 132 Ariz. 132, 133, 644 P.2d 286, 287 (App.1982)), "Rule 32 proceedings are not designed to afford ... an automatic delayed appeal." *Scrivner,* 132 Ariz. at 54, 643 P.2d at 1024. Nor does "Rule 32 destroy the basic principle of finality in criminal proceedings." *McFord,* 132 Ariz. at 133, 644 P.2d at 287.

Rule 32 creates an either/or choice. A defendant may proceed pro se or request assignment of counsel. To hold a defendant to his choice of these alternatives is consistent with Arizona's prohibition of hybrid representation; it mirrors a defendant's ability at trial to exercise either his right to counsel, with its concomitant waiver of the right of self-representation, or his right to self-representation, with its knowing waiver of the right to counsel.

Under Rule 32 the trial court had discretion to grant an extension upon a showing of good cause. Rule 32.4(c). We cannot say the trial court abused its discretion in denying the motion when nothing in the language of Rule 32, the Arizona Constitution, or the cases cited by *Montgomery* requires an extension for defendants whose attorneys find no claims worthy of review.

For all the foregoing reasons, we deny relief.

McGREGOR, J., concurs.

---

5. We note that despite the court's efforts to invoke a constitutional rationale for its decision, nowhere does *Montgomery* explicitly hold that

KLEINSCHMIDT, Judge, dissenting:

The majority holds that a defendant who files a petition for post-conviction relief, and whose attorney can find no meritorious issue to argue, is not entitled to file a supplemental memorandum *pro per* in support of his petition. The majority concludes that to allow a petitioner to raise issues on his own behalf is to endorse hybrid representation, and that this court's opinion in *Montgomery,* 178 Ariz. at 86, 870 P.2d at 1183, was an impermissible exercise in judicial rule making. I reaffirm my concurrence in *Montgomery,* and I address the specific arguments the majority makes.

Hybrid representation, according to *Stone,* 122 Ariz. at 308, 594 P.2d at 562, is undesirable because it can cause interruptions in judicial proceedings. Commentators have noted that hybrid representation detracts from the dignity and decorum of the courtroom, can result in a defendant insisting that counsel surrender substantial prerogatives of the office of attorney, and can be used as a guise for a defendant's presentation of unsworn statements. Wayne R. LaFave and Jerold H. Israel, Criminal Procedure, Vol. 2, § 11.5, at pp. 51 through 53 (1984). What all of this boils down to is that hybrid representation is undesirable because it makes it difficult to run an efficient and orderly judicial proceeding. But this objection does not apply when counsel for a petitioner is no longer actively involved in the case. While the Petitioner's attorney may still be counsel of record, for every practical purpose his activity in the case ended when he filed notice that he found no meritorious issue to argue.

The majority, citing cases, asserts that a party is bound by the acts of his counsel and that to allow the Petitioner to file his own memorandum violates that rule. None of the cases the majority mentions, however, deal with the situation where counsel asserts that there are no arguable issues at all. Under the rule the majority adopts, a petitioner would be denied access to the court no mat-

---

Rule 32, as written, violates due process by failing to provide defendants with the ability to proceed pro se.

ter how mistaken counsel might be in the belief that the case lacks merit. The fear that meritorious cases might thus escape redress is by no means fanciful. For example, during oral argument in *Montgomery,* able counsel for Montgomery pointed out that in two cases in which he had represented other defendants, the courts had granted relief to his clients on issues that he had not raised because he considered them lacking in merit. *See State v. McDaniel,* 127 Ariz. 13, 617 P.2d 1129 (1980); *State v. O'Dell,* 108 Ariz. 53, 492 P.2d 1160 (1972).[6]

In *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967), the Supreme Court squarely recognized that when counsel for a defendant finds his case to be wholly frivolous the defendant himself must be allowed to raise any points that he chooses. The majority says that this facet of *Anders* does not apply in the case before us because the right to self-representation which *Anders* mandates is "based on the defendant's right to appeal and predicated on counsel's request to withdraw." The Petitioner in this case has as much right to access to the court for his petition for post-conviction relief as the defendant in *Anders* had the right to access for his appeal. While the issues that can be considered on a petition for post-conviction relief might be much narrower than those that can be considered on appeal, the right to request the court to consider those issues is the same in both cases. The petitioner has a right under the Arizona Constitution to bring his claim, *any claim* within the ambit of the rule, to the attention of the court. Our supreme court recently made this point clear in *Wilson v. Ellis,* 176 Ariz. 121, 859 P.2d 744 (1993), which held that a defendant who files a petition for post-conviction relief is entitled to a transcript of the relevant proceedings, even without specifying the nature of his claim of error. The court noted that article 2, section 24 of the Arizona Constitution provides that an accused has the right of appeal in all cases and said:

It was precisely because of art. 2, § 24 that this court expressly left open the avenue of appellate review by PCR in lieu of direct appeal when it amended the rules with respect to cases involving admissions of probation violations.

*Id.* at 123, 859 P.2d at 746.

The defendant having a right to access, counsel cannot unilaterally shut the courthouse door. As the Supreme Court observed in *Anders,* "the court—not counsel—... proceeds ... to decide whether the case is wholly frivolous." 386 U.S. at 744, 87 S.Ct. at 1400.

The majority's second reason for avoiding the application of *Anders*—that counsel has not withdrawn in this case—was touched on in my earlier discussion. Whether there has been a formal withdrawal or not, counsel who certifies that there are no meritorious grounds for relief no longer controls the case. Indeed, although *Anders* does say that counsel who can find no issue to argue should withdraw, as a matter of custom withdrawal has never been required in Arizona in *Anders* cases as a prerequisite to allowing a defendant to file his own memorandum.

Finally on this question of hybrid representation, the majority argues that our supreme court, in *Wilson v. Ellis,* said that the courts should not "*Ander*-ize" Rule 32 proceedings. The majority reads *Wilson* broadly to mean that a petitioner ought not be allowed to file a memorandum *pro se* when counsel can find no issue to argue. What the majority said in *Wilson* was that "Contrary to the intimations of the dissent, we are not commanding, nor do we want, *trial courts* to conduct *Anders*-type reviews in PCRs." 176 Ariz. at 124, 859 P.2d at 747. A reading of both the majority opinion and the dissent suggests what the court was referring to as an "*Anders*-type review" was a review for fundamental error. I simply do not read *Wilson* to say that a petitioner may not file a *pro per* memorandum when his attorney asserts the case is without merit.

6. See also letter of James H. Kemper to Arthur Hazelton dated August 17, 1993, filed with the court in *Montgomery.* Both *McDaniel* and *O'Dell* were appealed before *State v. Stone* foreclosed

hybrid representation, which explains how the issues were brought to the attention of the court by the defendants themselves.

I turn to the question whether *Montgomery* was the exercise in impermissible rule making the majority believes it to have been. It is possible that when the rules relating to post-conviction relief were amended, nobody really considered what would happen if counsel avowed that there was no meritorious issue for review. It is also possible that the drafters of the rule simply assumed that in such a case the well established procedure mandated by *Anders* would apply. In any event, I suggest that to whatever extent rule making is involved in these cases, it is just as much an exercise in rule making for the majority to say that a petitioner cannot approach the court *pro per* as it is for us to have said in *Montgomery* that he can.

Speculation aside, *Wilson v. Ellis* settles the question. Since the Petitioner has a right under the Arizona Constitution to review, we should apply the rules relating to post-conviction relief in a manner which preserves access to the courts. *See State v. Birmingham,* 95 Ariz. 310, 316, 390 P.2d 103, 107 (1964). The time tested remedy the Supreme Court of the United States fashioned in *Anders v. California* is the way to preserve that access. I would grant the relief the Petitioner requests.